MARIANO LÓPEZ, JUDITH LÓPEZ y OTROS, demandantes y recurridos, *v.* AUTORIDAD DE CARRETERAS DE PUERTO RICO y OTROS, demandados y peticionarios.

*Número:* CE-92-438          *Resuelto:* 5 de mayo de 1993

*Gilberto E. Padua Trabal*, abogado del municipio recurrente; *Teresita Mercado*, de *Mercado & Soto*, abogada de los demandantes y recurridos.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos la ocasión para aclarar y precisar nuestros pronunciamientos en *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985), sobre cuándo y cómo se entiende cumplido el requisito de notificación de reclamación contra un municipio, establecido por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4703). Algunos foros a quo han interpretado este asunto de modos diversos, dando lugar a conflictos entre salas del Tribunal de Primera Instancia, que debemos conjurar.

I

El 21 de agosto de 1991 la demandante, Judith López, transitaba como turista por la intersección de las Avenidas Ashford y Condado, y mientras cruzaba dichas avenidas se cayó, sufriendo daños físicos. El 21 de noviembre de ese año presentó una demanda por daños y perjuicios en el Tribunal de Distrito Federal para el Distrito de Puerto Rico contra la Autoridad de Carreteras y el Departamento de Transportación y Obras Públicas, emplazando a dichas agencias el 16 de diciembre de 1991. Posteriormente, durante el descubrimiento de prueba, la Autoridad de Carreteras, a través de su contestación a un interrogatorio fechado 26 de febrero de 1992, levantó como defensa que el lugar donde ocurrió el accidente estaba bajo la jurisdicción del Municipio de San Juan y que dicho Municipio no había sido incluido como parte en la demanda. La demandante, al conocer de esta defensa, procedió entonces a notificar su reclamación al Municipio el 13 de marzo de 1992. El 12 de

abril de 1992 la acción ante el tribunal federal fue desestimada, a solicitud de la parte demandante, por falta de jurisdicción. Mientras tanto, el 26 de marzo de 1992 se presentó la demanda de autos ante el Tribunal Superior contra las mismas partes, pero incluyendo esta vez al Municipio de San Juan.

Una vez emplazado, el Municipio presentó una moción de desestimación fundamentada en que no se le había notificado del accidente y de la intención de demandar durante el término de noventa (90) días que establece el Art. 15.003 de la Ley Núm. 81, *supra*, 21 L.P.R.A. sec. 4703. Alegó el Municipio que habían transcurrido doscientos diez (210) días desde la fecha del accidente, y que no habiéndose demostrado justa causa que eximiera a los demandantes de cumplir con el requisito de la notificación previa, debía desestimarse la acción contra el Municipio.

La parte demandante se opuso a la desestimación, alegando que como el Estado y dos (2) instrumentalidades del Estado Libre Asociado —la Autoridad de Carreteras y el Departamento de Transportación y Obras Públicas— habían sido demandadas y emplazadas en el tribunal federal, se había cumplido con el requisito de notificación en cuestión, conforme a la tendencia liberalizadora del Tribunal Supremo sobre el particular anunciada en *Passalacqua v. Mun. de San Juan.* supra. También alegó que no fue hasta que la Autoridad de Carreteras contestó el interrogatorio antes mencionado cuando conoció de la posible existencia del Municipio como otra parte en el pleito, y que entonces procedió a notificar expeditamente.

El 24 de junio de 1992 el Tribunal Superior, Sala de San Juan, denegó la moción de desestimación del Municipio con un escueto "no ha lugar". Inconforme, el Municipio acudió en *certiorari* ante nos planteando las cuestiones de derecho siguientes:

1. ¿Constituye la presentación de una demanda contra una instrumentalidad del Estado Libre Asociado de Puerto Rico su-

ficiente notificación de la ocurrencia de un accidente e intención de demandar a un Municipio, conforme dispone la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991?

2. ¿Constituye la expedición de emplazamientos por un Tribunal muestra de la existencia de "justa causa" que exime a un reclamante del requisito de notificación dispuesta por el referido estatuto?

3. ¿Corresponde a un Municipio el deber de establecer perjuicio, por razón de destrucción de prueba o dislocación de testigos, para que prospere su reclamo de cumplimiento estricto con el requisito de notificación que estatuye la Ley de Municipios Autónomos del ELA de 1991? Petición de *certiorari*, págs. 3–4.

El 4 de septiembre de 1992 expedimos el recurso solicitado. Conforme a los fundamentos que se exponen a continuación, revocamos.

## II

■ El requisito de notificación escrita al alcalde o jefe ejecutivo municipal de cualquier reclamación por daños contra un municipio dentro del término de noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama, se estableció por primera vez en la Ley Municipal de 1960, se reprodujo en la Ley Orgánica de los Municipios de Puerto Rico de 1980 y sigue en vigor en la vigente Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81, *supra.*

■ En *Mangual v. Tribunal Superior*, 88 D.P.R. 491 (1963), interpretamos por primera vez el aludido requisito de notificación. Como parte del extenso análisis e investigación que realizamos sobre el particular, en *Mangual v. Tribunal Superior*, supra, pág. 494, reconocimos e identificamos que requisitos de notificación a los municipios como los de nuestra legislación responden a importantes propósitos públicos:·

... 1—proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación; 2—desalentar las reclamaciones infundadas; 3—propiciar un pronto arreglo de las mismas; 4—permitir la inspección inmediata del lugar del accidente antes de que ocurran cambios; 5—descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable; 6—advertir a las autoridades municipales de la existencia de la reclamación para que se provea la reserva necesaria en el presupuesto anual; y, 7—mitigar el importe de los daños sufridos mediante oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado.

En *Mangual v. Tribunal Superior*, supra, págs. 498–499, además, resolvimos que "en Puerto Rico el cumplimiento del requisito de notificación *es una condición previa de cumplimiento estricto para poder demandar al municipio*". (Énfasis suplido.) Adoptamos aquí, pues, la interpretación que a disposiciones análogas le habían dado la mayoría de los tribunales estatales de Estados Unidos, en términos de que dicha notificación " 'es una parte esencial de la causa de acción, y, a menos que se cumpla con la misma, no existe el derecho a demandar' ". *Mangual v. Tribunal Superior*, supra, pág. 495. Véanse, además: 3 *Yokley, Municipal Corporations* Sec. 448 (1958), y a 2 *Antieu, Municipal Corporation Law* Sec. 11.17 (1961). Llegamos a esta conclusión no sólo a base del estudio del historial legislativo de la disposición vigente entonces, según surgía del Diario de Sesiones, sino además porque la misma había sido tomada de la Ley Municipal de Nueva York, donde prevalecía dicha interpretación. Nótese también que la referida Ley Municipal de 1960, *al igual que las posteriores*, incluía un inciso en la disposición que establecía el requisito de notificación, el cual ordenaba que:

*No podrá iniciarse acción judicial de clase alguna contra un municipio por daños causados por la culpa o negligencia de aquél, a menos que se haga la notificación escrita, en la forma,*

*manera y en los plazos dispuestos en esta ley.*[1] (Énfasis suplido.)

Con posterioridad a *Mangual v. Tribunal Superior*, supra, aplicamos rigurosamente el requisito de notificación en cuestión, confirmando la desestimación de una acción por daños contra el Municipio de Ponce porque el demandante no hizo la notificación. *Ortiz v. Gobierno Municipal de Ponce*, 94 D.P .R. 472 (1967). Y en *E.L.A. v. Tribunal Superior*, 104 D.P.R. 160, 163 (1975), reiteramos con aprobación la norma expresada en *Mangual v. Tribunal Superior*, supra, señalando que " '[l]a notificación es una parte esencial de la causa de acción y, a menos que se cumpla con la misma, no existe el derecho a demandar' ".

▰ La disposición sobre notificación previa al municipio fue también objeto de interpretación por parte nuestra en *García v. Northern Assurance Co.*, 92 D.P.R. 245 (1965), opinión en la que resolvimos que dicha disposición no era aplicable a una compañía aseguradora de un municipio; en *Rosario Quiñones v. Municipio de Ponce*, 92 D.P.R. 586 (1965), caso en el que resolvimos que no era aplicable a acciones contra un municipio por la violación de un contrato (acción *ex contractu*); en *Insurance Co. of P.R. v. Ruiz*, 96 D.P.R. 175 (1968), opinión en la que resolvimos que no era aplicable en casos en los que un demandado reconvenciona contra un municipio demandante, y en *Díaz v. Municipio de Cayey*, 99 D.P.R. 196 (1970), caso en el que resolvimos que no era aplicable a acciones contra un municipio en las que se reclama justa compensación por el uso de una propiedad privada al amparo de la Sec. 9 del Art. II de la Constitución, L.P.R.A., Tomo 1.

---

[1] Véase el inciso (e) del Art. 96 de la Ley Municipal de 1960, Ley Núm. 142 del 21 de julio de 1960. Véase, también, el inciso (e) del Art. 11.03 de la Ley Orgánica de los Municipios de 1980 (21 L.P.R.A. sec. 3403(c)), y el inciso (b) de la ley vigente, 21 L.P.R.A. sec. 4703(b).

Nótese, también, que tanto la ley de 1980 como la de 1991 titulan esta notificación como *"requisito jurisdiccional"*.

■ Así las cosas, resolvimos entonces el caso *Passalacqua v. Mun. de San Juan*, supra, en el que decidimos que si un reclamante presenta su demanda contra el Municipio y diligencia el emplazamiento correspondiente *dentro del aludido término de noventa (90) días desde que tuvo conocimiento de los daños reclamados*, se cumple con el requisito de notificación previa de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 y no es necesario formalizar una reclamación por separado. Decidimos así porque, evidentemente, la presentación de una demanda junto con el debido emplazamiento son de por sí una clara notificación de la reclamación del demandante. Tienen indudablemente el efecto de poner sobre aviso al municipio de que existe una reclamación en contra suya, haciendo innecesario presentar aparte otra notificación con el mismo contenido. Insistir en que aún en tales circunstancias, cuando la demanda y el emplazamiento se han presentado dentro del término de noventa (90) días, debe cumplirse con el requisito de notificación por separado, dijimos entonces que esto sería incurrir en un rigorismo desmedido. Negar el derecho a reclamar en tales circunstancias arrojaría un resultado absurdo porque sería darle vitalidad a un requisito cuyo propósito ya ha sido cumplido. En *Passalacqua v. Mun. de San Juan*, supra, expresamente reiteramos nuestro rechazo de tal "interpretación literalista de la ley", y en ese contexto aludimos a casos como *Insurance Co. of P.R. v. Ruiz*, supra, como ejemplo de "nuestra trayectoria liberalizadora" sobre el particular.

■ En efecto, nuestras decisiones en *Passalacqua v. Mun. de San Juan*, supra; en *Insurance Co. of P.R. v. Ruiz*. supra; en *Díaz v. Municipio de Cayey*, supra; en *Rosario Quiñones v. Municipio de Ponce*, supra, y en *García v. Northern Assurance Co.*, supra, siguen todas una misma trayectoria. Todas tienen en común que hemos eximido a la parte reclamante del requisito de notificar al municipio por

separado dentro del término de noventa (90) días. Pero es menester entender clara y precisamente por qué no aplicamos dicho requisito en esas cinco (5) decisiones. *No lo hicimos porque consideraramos que el mismo carecía de vigencia o porque creyesemos que tal requisito era irrazonable, o tan restrictivo de los derechos de los reclamantes que debíamos dispensarlos del claro mandato legislativo.* Lo hicimos, sencillamente, porque en las circunstancias de cada uno de esos casos el esquema legislativo carecía de virtualidad; porque en ellos no se podían cumplir los propósitos y objetivos del requisito; porque jurídicamente no tenía razón de ser aplicar el requisito a tales circunstancias ya que no fue para ellas que se estableció dicho requisito. La dirección de nuestra "trayectoria liberalizadora" no ha sido la de dejar sin efecto un requisito que el legislador puertorriqueño claramente ha insistido en que debe cumplirse, sino la de aplicarlo a los casos en los que propiamente debe aplicarse, sin rigorismos desmedidos.

### III

■ El caso concreto ante nos es muy distinto a los cinco (5) ya mencionados. En el de marras no hay circunstancias que justifiquen eximir de la aplicación del requisito de la notificación municipal previa. El esquema legislativo tiene plena virtualidad aquí. La situación en cuestión es precisamente la que el legislador tuvo en mente cuando ordenó el requisito de la notificación previa dentro de noventa (90) días. Se trata: (1) de una reclamación de daños por responsabilidad extracontractual; (2) fundada en la supuesta culpa o negligencia del municipio; (3) incoada por iniciativa del reclamante; (4) directamente contra el municipio, y (5) en la cual el municipio no tiene forma de conocer los detalles esenciales del daño por el cual se reclama si no media alguna notificación adecuada por el reclamante. Presente estos elementos, el reclamante viene obligado a

notificar al municipio dentro de noventa (90) días, contados desde que tuvo conocimiento de los daños que dan lugar a la reclamación, y si no se hace esa notificación, *no procede acción judicial de clase alguna contra el municipio por dichos daños.*

Nótese que en este caso la demanda inicial del reclamante fue solamente contra la Autoridad de Carreteras y el Departamento de Transportación y Obras Públicas. Contrario a lo que sucedió en *Passalacqua v. Mun. de San Juan*, supra, la acción judicial no incluyó al municipio. No hubo, pues, notificación alguna a éste: ni la notificación formal separada que establece la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, ni la notificación judicial por vía de demanda y emplazamiento *al municipio*, que en *Passalacqua v. Mun. de San Juan*, supra, concluimos era una alternativa suficiente para cumplir con el mandato legislativo. Recientemente resolvimos que los municipios, como entidades autónomas del Estado, *tienen personalidad y capacidad jurídica independiente y separada de la del Gobierno de Puerto Rico*, por lo que no les aplica el término de sesenta (60) días para acudir en revisión ante nos que cobija al Estado Libre Asociado y a sus instrumentalidades al amparo de la Regla 53.1(b) de las reglas vigentes de Procedimiento Civil, 32 L.P.R.A. Ap. III. *Véase Alcalde de San Juan v. Asamblea Municipal*, 132 D.P.R. 820 (1993). A la luz del análisis que hicimos en dicha opinión, y con arreglo a las disposiciones de la Ley de Municipios Autónomos del Estado Libre Asociado de 1991, que expresamente establecen la capacidad legal propia de los municipios, independiente y separada del Gobierno del Estado Libre Asociado,[2] no es de modo alguno aceptable, como pretenden los recurridos, que con demandar y emplazar a dos (2) instrumentalidades del Estado Libre Asociado se considere jurídicamente notificado el municipio

---

[2] Véase 21 L.P.R.A. secs. 4003 y 4051.

concernido. Ello no es ni remotamente lo que resolvimos en *Passalacqua v. Mun. de San Juan*, supra, ni puede sostenerse bajo ningún análisis jurídico válido, no importa cuán liberalizadora sea la trayectoria de nuestros pronunciamientos anteriores ni cuán arraigada nuestra postura de no extender el requisito de notificación sin sentido crítico. *Díaz v. Municipio de Cayey*, supra. Aplica aquí, por analogía, lo que señalamos en *E.L.A. v. Tribunal Superior*, supra, pág. 164: "Es claro hasta la saciedad que el legislador dispuso que el funcionario a ser notificado de reclamaciones" contra un municipio es el alcalde de ese municipio, y "es tan inútil" notificar de un pleito contra un municipio a la Autoridad de Carreteras como sería en un pleito contra el E.L.A. notificar a algún otro Secretario que no sea el Secretario de Justicia.

Nótese, además, que aún si en el caso ante nos se hubiese incluido al municipio en la acción judicial inicial, tampoco se habría cumplido con lo resuelto en *Passalacqua v. Municipio de San Juan*, supra. Allí establecimos que para que la notificación judicial fuese un sustituto adecuado de la notificación formal separada que exige la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, *la demanda y el emplazamiento* debían efectuarse *ambos* dentro del término de noventa (90) días. En la situación de marras la demanda se presentó inicialmente noventa y un (91) días después de ocurrido el daño y el emplazamiento se diligenció ciento diecisiete (117) días después del accidente, así que no se cumplió de modo alguno con el término de noventa (90) días. La alegación de que la presentación de la acción judicial en el tribunal federal cumplió con el requisito de notificación conforme a lo resuelto en *Passalacqua v. Municipio de San Juan*, supra, es doblemente inmeritoria.

# IV

Para concluir, debemos examinar la contención de la parte recurrida de que notificó expeditamente al Municipio de San Juan una vez conoció que éste podía ser parte en el pleito también, cuando la Autoridad de Carreteras levantó el asunto como defensa durante los procedimientos de descubrimiento de prueba. Dicha notificación se hizo doscientos diez (210) días después de haber ocurrido el accidente en cuestión.

Las distintas leyes municipales que consistentemente han establecido el requisito de notificación previa han fijado taxativamente que dicha notificación debe realizarse *"dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños reclamados"*. (Énfasis suplido.) 21 L.P.R.A. sec. 4703(a). Los recurridos invocan a *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987), para alegar que el término aludido corre no sólo desde que se conoce del daño, sino desde que se conoce quién es el autor del daño.

No tienen razón los recurridos. Aparte del hecho de que estamos ante un mandato legislativo claro y tajante, contenido en una ley especial que aplica específicamente a determinadas acciones contra los municipios, y aparte del hecho de que nuestro pronunciamiento en *Riley v. Rodríguez de Pacheco*, supra, y antes en *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984), se dió en el contexto particularísimo de acciones de daños *por impericia médica*, la alegación de los recurridos es inmeritoria porque no alude a una situación en la que *no podía conocerse quién es responsable del daño* poco después de éste haber ocurrido. En la doctrina civilista, cuando se examina lo relativo a la prescripción de las acciones civiles torticeras, la tendencia más liberal, por consideraciones de justicia, es la de requerir que *fuese conocible la identidad del autor del daño* para que pueda correr el término prescriptivo. J. Santos Briz,

*Derecho de Daños*, Madrid, Ed. Rev. Der. Privado, 1963, pág. 293; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1976, T. I, Vol. 2, págs. 516–517. La correspondiente postergación del término prescriptivo supone que el reclamante no sabía *ni podía saber* quién fue el autor. Pero si no hay un elemento fáctico o material que impida conocer quién es el responsable, si el desconocimiento se debe a la falta de investigación o diligencia del reclamante, entonces no procede este requisito sobre la identidad del autor que en la doctrina liberal se ha sobreimpuesto a la normativa sobre la prescripción. *Colón Prieto v. Géigel*, supra, págs. 244–246; *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992).

En este caso los recurridos no alegan que estaban impedidos de conocer si el Municipio era responsable. Todo lo que alegan en realidad es que no se dieron cuenta de la posible responsabilidad del Municipio hasta que los demandados iniciales lo levantaron como defensa. El desconocimiento cabal de la ley o la falta de la simple diligencia de investigar bajo qué jurisdicción estaba el lugar donde ocurrió el accidente no son el tipo de situación que contemplamos en *Riley v. Rodríguez de Pacheco*, supra, o en *Colón Prieto v. Géigel*, supra. No podemos hacer caso omiso del claro mandato legislativo sobre el término dentro del cual debe realizarse la notificación sólo para acomodar el descuido o desidia del recurrido. El dato claro es que los reclamantes aquí desde el principio pudieron haber averiguado sin mucho esfuerzo sobre la posible responsabilidad del Municipio de San Juan y pudieron fácilmente haber hecho la notificación requerida a tiempo, pero no lo hicieron. Perdieron, pues, su derecho a reclamar.

Por las razones expuestas, *se revoca la resolución de instancia y se dictará sentencia que desestime la acción incoada por los recurridos contra el recurrente.*

Los Jueces Asociados Señores Negrón García y Hernán-

dez Denton concurrieron sin opinión escrita. El Juez Asociado Señor Rebollo López concurrió con una opinión escrita.

$$-\mathbf{O}-$$

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

El *resultado al que se llega en la opinión que emite una mayoría de los integrantes del Tribunal en el presente caso* —desestimación de la acción radicada por la parte demandante contra el Municipio de San Juan por no haber dicha parte cumplido con el requisito exigido por el Art. 15.003 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4703)— *es uno que, no hay duda, es correcto.*

*Ello así ya que si el legislador tuvo en mente alguna situación de hechos en particular al aprobar el referido estatuto* —que exige que se le dé notificación a los municipios de la ocurrencia de un accidente dentro del término de noventa (90) días, contado el mismo, de ordinario, desde el momento en que la parte demandante sufre el alegado accidente— *lo fue precisamente la situación de hechos a que se refiere la demanda que dio origen al presente recurso.*

En otras palabras, el recurso ante nuestra consideración plantea la "clásica" situación de hechos contra la cual el legislador precisamente quiso "proteger" a los municipios. Esto es, el caso en que una persona, alegadamente, sufre un accidente en una vía pública, o facilidad, bajo el control y supervisión de un municipio, la ocurrencia del cual, de ordinario, el municipio desconoce y en relación con el cual, de no informársele el mismo en un tiempo relativamente corto, *el municipio no podría*: "investigar [en tiempo] los hechos que dan origen a la reclamación"; "pro-

piciar un pronto arreglo de" la reclamación; inspeccionar el "lugar del accidente antes de que ocurran cambios" y/o arreglar el desperfecto con el propósito de evitar la ocurrencia de otros accidentes; "descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable"; "mitigar el importe de los daños sufridos"; etc. Véase *Mangual v. Tribunal Superior*, 88 D.P.R. 491, 494 (1963).

*¿Por qué entonces nuestra concurrencia? ¿Por qué no estamos conformes con la opinión emitida por el Tribunal?* Dos (2) son las *razones principales* que tenemos para ello. Examinémoslas.

## I

En *primer lugar*, y dicho de la manera más llana y sencilla posible, el caso *no* amerita publicarse ni certificarse como "Opinión del Tribunal"; esto es, debió utilizarse el vehículo decisorio de la "Sentencia". La "justificación o explicación" que se brinda al respecto en la opinión mayoritaria *no es convincente*. Realmente resulta difícil visualizar que exista "conflicto" entre los tribunales de instancia respecto a la interpretación de la decisión que este Tribunal emitiera en *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985); decisión que, en nuestra opinión, *es una extremadamente sencilla de entender y de aplicar.*

El asunto de la publicación de ponencias que deben ser certificadas como simples sentencias *no es uno que deba ser descartado ligeramente*. Como expresáramos en la opinión concurrente, de fecha 30 de enero de 1992, que emitiéramos en *Canales v. Converse de Puerto Rico, Inc.*, 129 D.P.R. 786, 792–794 (1992):(1)

El pasado 28 de junio de 1991 —en la opinión concurrente y disidente que emitiéramos en *Lasso v. Iglesia Pent. La Nueva*

---

(1) 92 J.T.S. 9.

*Jerusalem*, 129 D.P.R. 219, 245–246 (1991)— expresamos, *en lo pertinente*, que:

"Para que una ponencia en un caso normal y corriente, elaborada y suscrita por uno de los integrantes del Tribunal, pueda ser certificada como "Opinión del Tribunal" se requiere que la misma obtenga el *voto de conformidad* de por lo menos cuatro de los integrantes de este Foro judicial, en la situación en que todos sus miembros intervienen en el caso, o de por lo menos la "mitad más uno" de los Jueces que participan en el caso, en la alternativa de que algunos de sus integrantes se hayan inhibido o abstenido de intervenir en el mismo.

El voto de conformidad —a diferencia de cuando meramente se "concurre con el resultado"— que le brinda un Juez a la ponencia suscrita por uno de sus compañeros magistrados *significa* que ese Juez está conforme no sólo con el resultado a que se llega en la ponencia emitida sino que suscribe todos y cada uno de los fundamentos que se aducen en apoyo de ese resultado. Cuando meramente se "concurre con el resultado", *no* se endosan necesariamente todos los fundamentos aducidos en la ponencia en apoyo del resultado a que se llega.

Dicha función es una que no puede ser descargada "ligera" o caprichosamente por los integrantes de un tribunal colegiado como el nuestro. *Como es de todos conocido, una "Opinión del Tribunal" resulta obligatoria, como precedente, para nuestros tribunales de instancia.* Ello, en palabras sencillas, significa que dicha Opinión constituirá *derecho vinculante* en relación con las decisiones que emitan los referidos tribunales de instancia en el futuro en toda situación de hechos similar a la envuelta en el caso objeto de la "Opinión del Tribunal". Ahí radica, naturalmente, la importancia de que los fundamentos legales que se aducen en una Opinión en apoyo del resultado propuesto sean jurídicamente correctos.

No hay duda, en resumen, que la determinación que a diario tienen que hacer los integrantes de este Tribunal respecto a si endosan o no con su voto de conformidad las numerosas ponencias que se circulan en el seno del Tribunal, y si éstas ameritan o no ser publicadas como "Opinión del Tribunal", es una importante y fundamental para nuestro sistema de derecho. Es por ello que dicha determinación sólo debe ser el producto de un análisis jurídico objetivo y desapasionado; *totalmente libre el mismo de consideraciones de amistad, enojo, o prejuicio personal.*" ...

*Hoy añadimos el hecho obvio de que no toda decisión emitida por este Tribunal amerita ser publicada como "Opinión del Tribunal"; ello aun cuando el resultado y los fundamentos en que se basa la misma sean correctos en derecho.* Los integrantes de

este Tribunal *no deben perder de vista* que las "Opiniones" tienen el propósito, entre otros, de establecer nuevas normas de derecho, aclarar y depejar situaciones jurídicas complejas y confusas, y suplir "lagunas" en nuestro ordenamiento. Cuando el caso ante nuestra consideración lo que plantea son cuestiones *reiteradamente resueltas* por el Tribunal, el vehículo decisorio a utilizarse debe ser el de la "sentencia", la cual no establece norma alguna ni constituye precedente obligatorio.

El *uso indebido* del mecanismo procesal de la "Opinión" puede hacerle un grave daño a la imagen y reputación de este Tribunal. Los integrantes de este Foro no podemos darnos el lujo de envolvernos en una *fatua y estéril competencia númerica* de quién es el Juez que más "opiniones" publica. *Debemos mantener siempre presente que la calidad de la justicia que un juez dispensa no se mide exclusivamente a base de estadísticas.*

La Opinión mayoritaria emitida en el presente caso es un vivo ejemplo de uno de los *graves males* que han venido aquejando al Tribunal durante los últimos seis (6) años: la publicación, como "Opinión", de ponencias que deben ser certificadas como "sentencias", las cuales, curiosamente, han venido consistentemente recibiendo el voto de conformidad de una mayoría del Tribunal por razones totalmente ajenas a las que propiamente deben regir dichas determinaciones.

En la actualidad se encuentran pendientes de resolución final ante este Tribunal cientos de recursos, algunos de los cuales plantean cuestiones de fundamental importancia para nuestra ciudadanía y la clase togada en general. Es por ello que no alcanzamos a entender el por qué el Tribunal se envuelve en la preparación, redacción, y publicación de una ponencia como "Opinión del Tribunal" en relación con los hechos que plantea el presente recurso, el cual realmente debió de haber sido resuelto mediante una simple [sentencia] al efecto.

Aparte de constituir una estadística más —desde el punto de vista de "un caso más" que se resuelve mediante "Opinión y Sentencia"— *la ponencia emitida en el presente caso no añade nada nuevo o significativo a nuestro acervo jurisprudencial.* Dicho con el mayor respeto, la Opinión mayoritaria emitida en el presente caso no pasa de ser una pérdida de tiempo valioso. *Nos vemos obligados a ocupar parte de ese tiempo para explicar, y demostrar, lo antes expresado con el propósito de que esta situación no se repita en el futuro.* (Énfasis suplido y en el original.)

## II

Somos los primeros en aceptar que, habiendo ya el Juez suscribiente escrito en *dos* (2) ocasiones distintas sobre el antes mencionado tema, *procede cuestionar* la justificación para hacerlo nuevamente. En otras palabras, *¿por qué nuestra insistencia en el asunto y la emisión de una opinión concurrente en el presente caso?* La contestación resulta ser sorprendentemente sencilla.

La opinión mayoritaria emitida, a nuestro entender, resulta *dañina y peligrosa* para nuestro ordenamiento por cuanto la misma brinda la *errónea impresión* de que este Tribunal está dando "marcha atrás" respecto a la posición que asumiera en los casos: *Romero Arroyo v. E.L.A.*, 127 D.P.R. 724 (1991);[2] *Meléndez Gutiérrez v. E.L.A.*, 113 D.P.R. 811 (1983); *Rivera de Vincenti v. E.L.A.*, 108 D.P.R. 64 (1978); *Loperena Irizarry v. E.L.A.*, 106 D.P.R. 357 (1977); decisiones que aun cuando envuelven situaciones de hechos un tanto distintas —se trata de demandas contra el Estado Libre Asociado de Puerto Rico— *son aplicables, por analogía, a la situación en que se demanda a un municipio.*

Dicho de otra manera, la opinión mayoritaria emitida, *al omitir toda referencia a las decisiones arriba mencionadas*, puede tener el *efecto nocivo* de confundir a los tribunales de instancia en particular y a la profesión en general; situación que se complica, repetimos, al publicarse innecesariamente la ponencia como "opinión" en lugar de una simple "Sentencia" y en vista del *lenguaje tajante* en que está redactada la misma.

No debe perderse de vista el hecho de que las disposiciones del citado Art. 15.003 de la Ley de Municipios Autónomos del Estado Libre Asociado de 1991, *no son únicas en nuestro ordenamiento*. Esto es, el legislador —en este res-

---

[2] 91 J.T.S. 5.

pecto y aspecto— *no sólo protegió a los municipios sino que igualmente protegió al Estado.* Como es sabido, las disposiciones del Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. sec. 3077(a), son *prácticamente iguales* a las del referido Art. 15.003.

En relación con el mencionado Art. 2A, hemos expresado —en *Loperena Irizarry v. E.L.A.*, ante, págs. 359–360— que nuestra "jurisprudencia ha sido constante en sostener que la notificación previa al Estado en reclamaciones por daños y perjuicios originados en negligencia ..., si bien es requisito de cumplimiento estricto, *no* alcanza calidad de condición precedente jurisdiccional. ... *Esta calificación libera al tribunal de un automatismo dictado por el calendario y salva su fundamental facultad para conocer del caso y proveer justicia según lo ameriten las circunstancias".* (Énfasis suplido.)

Un año más tarde, en *Rivera de Vincenti v. E.L.A.*, ante, pág. 69, dictaminamos que el *"rigorismo desmedido* en la exigencia de la notificación previa, que evade el elemento atemperante de 'justa causa' provisto en el estatuto, *no debe ser rémora en la evolución del pensamiento jurídico que tanto en la legislación como en la jurisprudencia está en marcha contra las inequidades residuales del otrora culto a la inmunidad del soberano, impulsado por el contemporáneo concepto que iguala al Estado y al ciudadano ante el tribunal".* (Énfasis suplido.)

En *Meléndez Gutiérrez v. E.L.A.*, ante, pág. 815, nos enfrentamos a una situación en que el Estado alegaba no haber sido notificado, conforme exige el mencionado Art. 2A, por un demandante que reclamaba daños y perjuicios, por "mala práctica de la medicina", alegadamente sufridos mientras estuvo recluido en una institución hospitalaria del Estado. Al *nuevamente evitar* caer en la *aplicación automática* del citado estatuto expresamos —manifestaciones que *reiteramos* en *Romero Arroyo v. E.L.A.*, ante, en el año

1992— que "en casos como en el presente —*donde el riesgo de que la prueba objetiva pueda desaparecer es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique*— no es de aplicación inexorable la citada Sec. 3077a por cuanto el objetivo que se persigue mediante la aplicación de la referida disposición legal no tiene razón de ser". (Énfasis suplido.)

Enfatizamos, y repetimos, que esta "filosofía jurisprudencial" de flexibilidad en la aplicación del referido Art. 2A de la referida Ley de Reclamaciones y Demandas contra el Estado, aun cuando establecida en casos de demanda radicados contra el Estado, *es de aplicación —por analogía— en casos de demandas radicadas contra los municipios, y la misma debe ser mantenida bien presente por nuestros jueces de instancia al enfrentarse a cualquiera de las dos (2) antes mencionadas situaciones.*

Debido a ello, y con el propósito de enfatizar ese hecho, es que hemos considerado procedente expresarnos por separado en el presente caso.