# United States Court of Appeals
## For the First Circuit

No. 01-2408

RAYMOND LEÓN; CARMEN PANTOJAS-MALDONADO;
CONJUGAL PARTNERSHIP, LEON-PANTOJAS;
RAYMANUELLE LEON-PANTOJAS, minor,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF SAN JUAN,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., <u>Senior District Judge</u>]

Before

Lynch and Howard, <u>Circuit Judges</u>,
and Shadur,[*] <u>Senior District Judge</u>.

<u>Rick Nemcik-Cruz</u>, for appellant.

<u>Maritza Torres-Rivera</u>, with <u>Adrián Mercado</u> on brief, for
appellee.

February 14, 2003

---

[*]Of the Northern District of Illinois, sitting by designation.

**SHADUR, <u>Senior District Judge</u>.** Raymond Leon, Carmen Pantojas-Maldonado, their marital partnership and their son Raymanuelle Leon-Pantojas ("Raymanuelle")(collectively "Plaintiffs") appeal from the district court's grant of summary judgment in favor of the defendant Municipality of San Juan[1] ("Municipality" or "San Juan") in this diversity of citizenship action. Plaintiffs contend (1) that the Municipal Hospital of the City of San Juan was negligent and in breach of its statutory duties when it failed to screen Raymanuelle for phenylketonuria ("PKU") as an infant and (2) that all necessary preconditions for this lawsuit have been met.

After reviewing the parties' submissions on San Juan's motion for summary judgment under Fed. R. Civ. P. ("Rule") 56, the district court granted that motion because Plaintiffs had failed to notify San Juan within 90 days of learning of the damages claimed as required by Article 15.003 of the Autonomous Municipalities Act of the Commonwealth of Puerto Rico ("Municipal Notice Statute"). We reverse the district court's grant of summary judgment in favor of San Juan and remand this case for further proceedings consistent with this opinion.

---

[1] All other defendants that remained in the case, physicians who had treated Raymanuelle in Puerto Rico at some point in time, their spouses and their marital partnerships, were voluntarily dismissed without prejudice to allow this appeal to go forward.

<u>Subject Matter Jurisdiction</u>

Although the parties failed to note the less-than-precise nature of the pleadings as to the establishment of the required diversity of citizenship, we of course have the obligation to consider such subject matter jurisdictional issues sua sponte. We have done so, and as the brief ensuing discussion reflects, we have confirmed that jurisdiction exists.

Plaintiffs' Second Amended Complaint ("Complaint") alleges that they are "residents" of Florida. Because 28 U.S.C. §1332 ("Section 1332") vests federal courts with jurisdiction over cases involving "citizens" of different states who meet the amount in controversy requirement (an element clearly satisfied here), Plaintiffs' terminology is both imprecise and technically incorrect. In this Circuit, however, the failure to use the term "citizen" or "domiciliary" rather than "resident" does not necessarily preclude diversity jurisdiction (<u>see</u> <u>Cantellops</u> v. <u>Alvaro-Chapel</u>, 234 F.3d 741, 742-43 (1st Cir. 2000)).

Here the record contains evidence that at the time of suit Plaintiffs were not only residents of Florida but were also domiciled there, intending to remain indefinitely as required under Section 1332. Plaintiffs relocated to Florida in part to secure better medical treatment for Raymanuelle, who will likely need long term care. At the time the Complaint was filed, they had lived for

-3-

three years in Florida, where both parents are employed and Raymanuelle is enrolled in the elementary school system.

Despite the deficient terminology in their pleading, then, Plaintiffs' residence plainly coincides with their state of citizenship, so that Section 1332's diversity jurisdiction was properly invoked. We therefore turn to the merits.

## Standard of Review

We review the grant of summary judgment de novo, applying the same standard as did the district court (Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)). Under Rule 56(c) summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Familiar Rule 56 principles impose on San Juan as movant the initial burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). On appellate review we, like the district court, are required to draw all reasonable inferences in the light most favorable to nonmovant Plaintiffs (Carroll, 294 F.3d at 237).

## Facts

Raymanuelle was born on August 25, 1988 in the Municipal Hospital of the City of San Juan ("Hospital"), a facility operated

-4-

by San Juan. Blood samples taken from Raymanuelle were tested for certain diseases, but it is uncontested that he was not screened for PKU at that time. Raymanuelle's mother was discharged from the Hospital on August 26, 1988, and the newborn was discharged the following day.

Early in Raymanuelle's life his parents noticed problems with their son's development, and they sought medical treatment for him from numerous doctors and clinics. In 1996 Plaintiffs moved to Tampa, Florida, in large part to obtain better medical and rehabilitative care for their son. Tampa Dr. Terry DeClue first diagnosed Raymanuelle's condition as classic PKU on July 30, 1998, and he notified the parents of that diagnosis in an August 5, 1998 letter.

Until that time Raymanuelle's parents had believed that their son had been properly screened by the hospital at the time of his birth. But in light of the PKU diagnosis, Dr. DeClue then began efforts to obtain Raymanuelle's medical records from Puerto Rico. Based on his review of those records, the Plaintiff parents first learned that the Hospital had not screened Raymanuelle for PKU.

According to the Complaint, PKU is a metabolic disease that results in mental retardation and other neurological problems when treatment is not initiated within the first few weeks of an infant's life. On July 2, 1987 Puerto Rico enacted a statute that

-5-

required the creation and adoption of regulations to implement mandatory genetic screening for all Puerto Rico newborns (24 P.R. Laws Ann. §§3152-3155). In October 1988, shortly after Raymanuelle's birth, regulations pursuant to that statute were approved that required all hospitals in Puerto Rico to screen newborn infants for PKU.

In their original Complaint filed on August 4, 1999, Plaintiffs sued the Hospital as well as the physicians who treated Raymanuelle in Puerto Rico for negligently failing to screen for and diagnose Raymanuelle's PKU. Plaintiffs allege that because Raymanuelle's condition went undiagnosed and untreated for years, he suffered irreversible neurological damage and severe mental retardation, as a result of which he will require lifelong care. Notice of the original Complaint was served on San Juan on August 13, 1999.

San Juan later filed a Rule 56 motion, arguing (1) that Appellants had failed to notify the Municipality within 90 days of learning of the damages claimed as required by the Municipal Notice Statute (21 P.L.R.A. §4703), (2) that the action was time-barred and (3) that there was no duty to screen Raymanuelle for PKU at the time of his birth in August 1988. On August 6, 2001 the District Court granted San Juan's motion on the first ground and dismissed the action. This appeal followed.

<u>Municipal Notice Statute</u>

This action concerns the application of Puerto Rico's Municipal Notice Statute (21 P.R. Laws Ann. §4703):

> Any person who has a claim of any kind against a municipality for personal or property damages due to the fault or negligence of the municipality shall so notify the Mayor, in writing, stating clearly and concisely the date, place, cause and general nature of the damages suffered. Said notification shall also specify the amount of monetary compensation or the kind of relief appropriate for the damages suffered, the names and addresses of his/her witnesses, the claimant's address and, in cases of personal damages, the place where medical treatment was first received.

> \*        \*        \*

> If the injured party is a minor or a ward, the person exercising patria potestas or the custody of the minor, or the guardian, as the case may be, shall be obliged to notify the Mayor of the claim within ninety (90) days of the date on which he/she learned of the damages claimed. The above shall not be an obstacle to the minor or ward's making said notification on their own initiative within the specified term, if the person exercising patria potestas, or custody or guardianship fails to do so.

> (b) Jurisdictional requirement.-- No legal action of any kind shall be initiated against a municipality for damages due to negligence unless written notification is made in the form, manner and terms provided in this subtitle.

Interpreting that statute, the Supreme Court of Puerto Rico has held, most recently in <u>Mendez Pabon</u> v. <u>Mendez Martinez</u>, 2000 TSPR 119 (2000), that the notice requirement, while not jurisdictional in nature, is a "condition precedent requiring strict compliance"

(J.S.T. at 22[2]; see also Passalacqua v. Municipality of San Juan, 116 P.R.R. 756, 766 (1985), quoting Mangual v. Superior Court, 88 P.R.R. 475, 483 (1963)).

But that condition has not been applied inexorably (Mendez Pabon, J.S.T. at 22). Instead the Supreme Court of Puerto Rico has "allowed the flexible application" of the Municipal Notice Statute in light of the purposes and objectives of the statute[3] (id.). Lopez v. Puerto Rico Highway Auth., 133 P.R. Dec. 243 (1993) explained that some claimants have been exempted from the notification requirement "because under the circumstances of each one of those cases the legislative scheme was devoid of vitality; because in them the purposes and objectives of the requirement could not be achieved; because legally, there was no raison d'etre

_____

[2] All "J.S.T." references are to pages of the parties' joint stipulated translations of some of the decisions of the Supreme Court of Puerto Rico cited in this opinion (see n.4).

[3] Mendez Pabon, J.S.T. at 21-22 repeated those purposes and objectives as explained in Mangual:

1) to provide the political bodies an opportunity to investigate the facts which give rise to the claim;
2) to discourage unfounded claims;
3) to facilitate a prompt settlement;
4) to permit immediate inspection of the scene of the accident before conditions change;
5) to discover the names of witnesses and interview them while their recollections of the events is trustworthy;
6) to notify the municipal authorities of a pending legal action so that the necessary financial reserves are provided in the annual budget; and
7) to minimize the amount of damages sustained through prompt intervention offering medical treatment and the provision of medical facilities to the injured party.

-8-

for applying the requirement to such circumstances since said requirement was not established for them" (J.S.T. at 8).  But Lopez, id. outlined the congeries of circumstances that would mandate strict compliance with the requirement: (1) an extra-contractual claim for damages (2) based on the municipality's alleged fault or negligence, (3) initiated by claimant (4) directly against the municipality (5) "in which the municipality has no means to know the essential details of the damage based upon which the claim is filed without some adequate notice by the claimant."[4]

Where the government entity does have its own means to know of the damage suffered by a claimant without outside notice, however, the Puerto Rico Supreme Court has taught that the statutory notice is unnecessary--essentially that the fifth factor later identified in Lopez is not present (Melendez Gutierrez v. Commonwealth of Puerto Rico, 13 P.R. Offic. Trans. 1046 (1983)). For that reason Melendez, id. at 1049 reversed the lower court's dismissal of a claim that alleged medical negligence on the part of a Commonwealth hospital.  That dismissal had been predicated on Plaintiffs' non-compliance with Article 2A of the Law of Claims and Suits against the State ("Commonwealth Notice Statute," 32 P.R.

---

[4] Because the Supreme Court of Puerto Rico has yet to release an official translation of Lopez, the text here quotes the version provided by the parties on appeal as a stipulated translation in compliance with our Circuit Rule 30(d).  Plaintiffs argue that the district court relied on an erroneous translation of the fifth element in Lopez. As discussed later in the text, however, the result we reach hereafter does not require us to confront that issue.

Laws Ann. §3077a), a provision directly analogous to the Municipal Notice Statute. Because it found that the operative events had been thoroughly documented in the records kept by the hospital, Melendez, id. at 1049 held:

> [I]n cases such as the one at bar -- where the risk of the objective evidence's disappearance is minimal, where there is effective proof of the identity of the witnesses, and where the State may easily investigate and corroborate the facts alleged in the complaint filed --the cited § 3077a is not strictly applicable inasmuch as the objective sought by the application therefor has no raison d'être.

Although Plaintiffs have understandably stressed Melendez both in their district court opposition to San Juan's Rule 56 motion and then again before us, San Juan has simply ignored that decision in all of its court submissions. Instead San Juan has approached this litigation as though the Municipal Notice Statute must be viewed as a no-exception requirement.

That, however, is a basic misconception. To be sure, Melendez dealt with the application of the Commonwealth Notice Statute rather than the Municipal Notice Statute. But because of the common source, the nearly identical language and the intertwined history of the two statutes, the Supreme Court of Puerto Rico has consistently interpreted them in tandem (see, e.g., Passalacqua, 116 P.R.R. at 763-64). Indeed, the recent Mendez Pabon decision expressly cited Melendez and specifically looked to judicial interpretations of the Commonwealth Notice Statute to shed

-10-

light on the application of the notification requirement to a suit against the municipality (J.S.T. at 22).

Thus San Juan's omission of cases interpreting the Commonwealth Notice Statute from its analysis reflects precisely the "erroneous impression" of Puerto Rican law adverted to in the concurring opinion in Lopez, J.S.T. at 15 (Rebollo Lopez, J., concurring). Instead cases such as Mendez Pabon make it clear that courts are to apply the Melendez-created judicial exception to the Commonwealth Notice Statute with equal force to the Municipal Notice Statute.

Just as was true in Melendez, newborn Raymanuelle's medical records--which have been in the Hospital's control since his birth and are still present there--thoroughly document the key facts at issue and identify the percipient witnesses to his treatment by the Hospital. And that being so, the question becomes whether that knowledge on the Hospital's part--memorialized as it is in incontestable documents that have been retained over the intervening years--satisfies the fifth Lopez-identified element needed to allow the exception to the notice statute. Melendez teaches an affirmative answer to that question, and we agree.

As indicated in n.4, Plaintiffs seek to add another string to their bow by urging that the district court, relying on an erroneous translation of the fifth element, wrongly asked whether the Hospital (and hence San Juan) had no way to know the

-11-

essential details of Plaintiffs' claim for damages absent notice, rather than whether the municipality had no other way to know the essential details of the harm for which Plaintiffs have demanded compensation. They point to the fact that the Supreme Court of Puerto Rico has not made available an official translation of Lopez. But we need not enter the fray on that score, for Melendez compels our conclusion here under the stipulated translation of Lopez that has been provided by the parties.

In sum, the Hospital's records themselves unquestionably gave San Juan knowledge of the damage to Raymanuelle based on which Plaintiffs' claim is filed without any need for further notification from Plaintiffs--those retained records definitively show the Hospital's failure to test Raymanuelle for PKU. And under Melendez such absence of any need for notification took Plaintiffs' claim out of the reach of the Municipal Notice Statute. Because Melendez controls here, we reverse the result reached by the district court.

### Equal Protection Challenge

Because we have found the district court's ruling on applicability of the Municipal Notice Statute to be erroneous, we also need not consider Plaintiffs' alternative contention that the legislation violates the Equal Protection Clause. But that issue is not properly before us in any event, for Plaintiffs failed to raise it in the court below.

-12-

<u>Other Rule 56 Issues</u>

As stated earlier in this opinion, San Juan's Rule 56 motion also argued that Plaintiffs' claim is time-barred and that the Hospital had no duty to test newborn Raymanuelle for PKU. Although the district court reached neither of those contentions because it dispatched the case on the ground discussed at length here, the principle that an affirmance on appeal can be based on any available ground compels us to spend a few moments on those matters as well.

As to the limitations issue, San Juan contends this action was untimely because it was not brought until August 4, 1999, more than a year after Dr. De Clue diagnosed Raymanuelle's PKU condition on July 30, 1998. But the documentary record of Dr. DeClue's notice of that diagnosis to Raymanuelle's parents is his August 5, 1998 letter to them, dated less than a year before suit was filed.[5] Unless San Juan were somehow able to establish on remand that the doctor advised the parents of the diagnosis before he wrote them, then, its limitations argument fails.

As for the duty of care issue, the absence of any resolution of that facet of Plaintiffs' negligence claim by the

_____

[5] Before us San Juan asserts, without any support in the record, that Plaintiffs themselves learned of Raymanuelle's PKU diagnosis on July 30, 1998 (when the doctor first arrived at that diagnosis) rather than upon their receiving the doctor's August 5 letter.

-13-

district court makes it one of the matters to be resolved on remand. We therefore express no view on the subject.

## Conclusion

We REVERSE the order of the district court granting San Juan's Rule 56 motion for summary judgment. We REMAND the case to the district court for further proceedings in light of this opinion.