EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Myriam Vera Morales, Benny García García y Yaritza García Vera<br><br>Demandantes-Peticionarios<br><br>v.<br><br>Dr. Alfredo Bravo Colón, et als<br><br>Demandados-Recurridos | Certiorari<br><br>2004 TSPR 30<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2002-937

Fecha: 27 de febrero de 2004

Tribunal de Circuito de Apelaciones:
                    Circuito Regional V

Juez Ponente:
                Hon. German J. Brau Ramírez

Abogado de la Parte Peticionaria:
                Lcdo. Juan Ramón Rivas Rivera

Abogado de la Parte Recurrida:
                Lcdo. José Héctor Vivas

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Myriam Vera Morales, Benny
García García y Yaritza García
Vera

    Demandantes Peticionarios                                    Certiorari
                                           CC-2002-937
            v.

Dr. Alfredo Bravo Colón, et als

    Demandados Recurridos


Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.


San Juan, Puerto Rico, 27 de febrero de 2004.

¿El término prescriptivo para el ejercicio de una acción de daños y perjuicios por impericia médica debe computarse a partir de que el perjudicado tiene conocimiento de toda la magnitud y extensión de las consecuencias lesivas de sus daños corporales, y de la identidad del médico que los causó, por su conducta o actuación negligente? ¿Existe controversia real sustancial sobre hechos materiales y esenciales en el caso de autos relacionados con el asunto anterior que impide su resolución mediante el mecanismo de sentencia sumaria? Esos son los asuntos que nos presenta el recurso ante nos. Se confirma la sentencia recurrida.

I

El señor Alfredo Bravo Colón es doctor en medicina y para el mes de octubre de 1999, atendía pacientes en el Hospital Dr. Pila de la ciudad de Ponce.

La parte demandante de autos, aquí peticionaria, alegó ante el Tribunal de Primera Instancia que el 5 de octubre de 1999, la señora Miriam Vera Morales, residente de la ciudad de Ponce, fue admitida en el Hospital Dr. Pila por orden del doctor Bravo Colón para ser sometida a una intervención quirúrgica para la extirpación de un quiste ubicado en su ovario izquierdo. Durante ese mismo día, la señora Vera Morales fue llevada a la sala de operaciones de dicha institución donde se le practicó una laparotomía exploratoria, oferoctomía derecha y ureterólisis derecha. Estos procedimientos quirúrgicos incluyeron la extirpación del ovario derecho de la paciente.

Tres días después de ser intervenida quirúrgicamente, la señora Vera Morales comenzó a quejarse de dolor abdominal generalizado, gases y estreñimientos. Tenía fiebre y padecía de retención urinaria. Fue examinada por otros facultativos médicos quienes encontraron que tenía efusiones pleurales bilaterales, cantidad prominente de líquido libre alrededor del hígado y en la cavidad pélvica, y una masa grande y de densidad mixta que se proyectaba hacia la parte media y superior de la pelvis hasta el abdomen, compatible con un abceso grande.

La señora Miriam Vera Morales fue intervenida nuevamente el 10 de octubre de 1999, en la sala de operaciones del Hospital Dr. Pila. Durante la intervención quirúrgica realizada en esa fecha se constató que surgía una laceración en su uréter derecho. Fue llevada a la unidad de cuidado intensivo y se le conectó un respirador artificial. El 25 de octubre de 1999, fue dada de alta y enviada a su casa.

El 27 de noviembre de 1999, la señora Miriam Vera Morales volvió a ser admitida al Hospital Dr. Pila bajo el cuidado del doctor Héctor Cordero Jiménez. Se le diagnosticó una laceración distal derecha del uréter y un "right hidroneproma". Esto es, la laceración de su uréter provocaba extravasación de orina en la paciente. El 29 de noviembre de 1999, la señora Vera Morales fue sometida a una tercera intervención quirúrgica. En esa ocasión se le practicó un procedimiento médico (Intravenus Venus Pyelogram), mediante el cual se detectó hidronefrosis derecha y excreción urinaria prolongada. Se le realizó un pielograma derecho que demostró extravasación del uréter distal. Se le removió una sonda que se le había dejado durante la intervención quirúrgica del 10 de octubre de 1999, dirigida a la reparación de la laceración de su uréter derecho y se le colocó en esa área un "double J". Con esa última intervención quirúrgica se logró liberar la hidronefrosis y se evitó la extravasación de orina por laceración de uréter. La paciente fue dada de alta el 4 de

diciembre de 1999, todavía con el "double J" en el uréter, el cual permaneció allí por espacio de seis meses.

El 30 de julio de 2001, un año y nueve meses después de la primera intervención quirúrgica practicada por el doctor Alfredo Bravo Colón, la señora Miriam Vera Morales y su compañero consensual, señor Benny García García y la hija de ambos, menor de edad, Yaritza García Vera, instaron ante el Tribunal de Primera Instancia la demanda de autos, sobre daños y perjuicios por impericia médica contra el doctor Alfredo Bravo Colón y su esposa Fulana de Tal y la Sociedad Legal de Gananciales compuesta entre ambos. Aseveró la parte demandante, además, de los hechos antes desglosados, que el doctor Bravo Colón había sido negligente al practicarle la intervención quirúrgica, al aplicar un tratamiento médico inadecuado al quiste de su ovario izquierdo, al extirparle su ovario derecho y al lacerar su uréter derecho. La señora Vera Morales alegó que la negligencia del doctor Bravo Colón le había producido grandes molestias y daños, por la extravasación de orina, lo que le había requerido someterse a las intervenciones quirúrgicas antes indicadas.

La parte demandada de autos contestó la demanda negando las alegaciones y levantando varias defensas afirmativas. Arguyó, que la causa de acción incoada en la demanda estaba prescrita.

Luego de varios trámites la parte demandada presentó una moción de sentencia sumaria ante el Tribunal de Primera

Instancia.  Arguyó, que la demanda fue presentada fuera del término prescriptivo de un año dispuesto por el Artículo 1868 del Código Civil de Puerto Rico.[1]  Adujo, que la parte demandante tenía conocimiento de sus daños por más de un año antes de la presentación de la demanda y que conocía o debía conocer que podía ejercitar una causa de acción, pues para el 7 de diciembre de 1999 ya había contratado al abogado que la representa en los procedimientos de autos.  Se apoyó en lo aseverado por la parte demandante en la demanda de autos.[2]  Desglosó una serie de hechos materiales, que alegadamente no estaban en controversia.[3]

_____

[1] 31 L.P.R.A. sec. 5298.

[2] Acompañó con dicho documento una declaración jurada, suscrita y firmada por la demandante, señora Miriam Vera Morales, otorgada ante la Notario Público, licenciada Leida González Degró el 7 de diciembre de 1999 en Ponce, Puerto Rico, Affidávit número 3866; Apéndice IX, Volumen II, supra, págs. 20-26.

[3] Los referidos hechos, según alegados, se relacionan a continuación:

1. El 5 de octubre de 1999 la demandante fue sometida a una laparotomía exploratoria, oferoctomía derecha y ureterolicis, (párrafo 3 de la Demanda).

2. Desde tres días luego de la operación de la demandante sintió dolor abdominal generalizado, gases, estreñimiento, fiebre y retención urinaria, (párrafo 4 de la Demanda).

3. El 10 de octubre de 1999 a la demandante se le diagnosticó y conocía que tenía una laceración en el uréter derecho, (véase párrafo 7 de la Demanda.)

4. El 27 de noviembre de 1999 el Dr. Héctor Cordero Jiménez diagnosticó a la demandante "right distal ureteral laceration y right hidroneproma." (párrafo 10 de la Demanda.)

5. El 29 de noviembre de 1999 la demandante fue sometida a una intervención quirúrgica, en la cual "se evitó la extravación de orina por laceración del uréter derecho," (párrafo 12 de la Demanda.)

La parte demandante se opuso a dicha moción por escrito. Arguyó, que no había tenido conocimiento de sus daños hasta luego de haber contratado a un perito ginecólogo, doctor Rafael Marcano, quien rindió un informe pericial el 18 de mayo de 2001; quien opinó que el doctor Alfredo Bravo Colón había incurrido en negligencia. Alegó, que el doctor Bravo Colón nunca le manifestó a la señora Vera Morales que de forma negligente le había lacerado el uréter derecho y mucho menos que le operó el ovario derecho, máxime cuando el documento que recoge su consentimiento para ser intervenida quirúrgicamente hacía referencia que el ovario que iba a ser sujeto de ese procedimiento era el izquierdo.[4]

_____

6. El 7 de diciembre de 1999 la demandante había gestionado los servicios del Lcdo. Pablo Colón Santiago, autorizándole mediante declaración jurada a éste obtener copia fiel y exacta de los récord médicos de Myriam Vera Morales en el Hospital Dr. Pila, donde fue intervenida quirúrgicamente por el Dr. Alfredo Bravo Colón, (véase Declaración [sic] Jurada [sic] de Myriam Vera Morales #3866 [sic], suscrita ante la notario Leyda González Degró el 7 de diciembre de 1999.)(Exhibit 1)

7. La demandante conocía que fue lacerado el uréter derecho durante la intervención quirúrgica del demandante ya para el 27 de noviembre de 1999, (véase párrafo 10 de la Demanda.)

8. Aún más, ya para el 7 de diciembre de 1999 había gestionado los servicios de representación legal para a todas luces instar una reclamación contra la parte aquí compareciente, (Exhibit 1.)

9. Los hechos alegados ocurrieron el 5 de octubre de 1999 y la Demanda fue radicada el 31 de julio de 2001.

[4] Dicho escrito fue juramentado por la señora Miriam Vera Morales, ante la Secretaria Auxiliar del Tribunal de Primera Instancia el 7 de febrero de 2002 en Ponce, Puerto Rico; Apéndice X, Volumen II, supra, págs.27-33.

El 8 de febrero de 2002, el Tribunal de Primera Instancia emitió resolución declarando no ha lugar la moción de sentencia sumaria presentada por la parte demandada, notificada a las partes el 28 de febrero de 2002. Concluyó que la parte demandada no había establecido con claridad ser acreedora a que se dictara sentencia sumaria a su favor. Expresó al fundamentar su decisión, lo siguiente:

> Como bien indica la parte demandante, la sospecha de que algo anda mal no representa conocimiento necesario; añadimos nosotros que ante la naturaleza de prueba que requiere este tipo de reclamación, no podemos establecer con exactitud desde cuando comienza a correr el término, pues la naturaleza de una reclamación por mala práctica profesional de la medicina —en contraste con otras— resulta más compleja.
>
> De la faz de las alegaciones surge que no podemos determinar con exactitud desde cuándo nació la acción, pues la titular del derecho —la aquí demandante— tenía que realizar una serie de gestiones no tan solo para ejercitar su acción— o sea, presentar la misma ante los Tribunales, sino saber a quien o quienes dirigir su demanda y establecer alegaciones suficientes en la demanda para dar noticia al demandado o demandados del daño por el cual se reclama, pues de lo contrario, de inicio, su acción, sería derrotada Colón Prieto v. Geigel, 115 D.P.R. 232, 246-247 (1984).

Insatisfecha la parte demandada con la resolución emitida por el Tribunal de Primera Instancia presentó el 11 de marzo de 2002, recurso de certiorari ante el entonces Tribunal Circuito de Apelaciones. Arguyó, que no existía impedimento alguno para que se acogiera afirmativamente su solicitud de sentencia sumaria, pues la demandante de autos debió haber conocido de sus daños y del autor de los mismos desde diciembre de 1999.

La parte demandante presentó ante el foro intermedio apelativo escrito de oposición al recurso de certiorari el 24 de mayo de 2002. Arguyó, que solicitó y obtuvo asesoramiento legal a los fines de indagar si sus sospechas de que "algo andaba mal" suponían la intervención de algún acto culposo u omisión negligente con respecto a los procedimientos médicos a los que estuvo sometida la señora Vera Morales, y quién era responsable. Adujo, que no fue hasta que finalmente recibió el informe pericial del doctor Rafael Marcano que tuvo conocimiento de sus daños y del autor de los mismos.

El tribunal intermedio apelativo expidió el auto de certiorari solicitado y emitió sentencia el 31 de octubre de 2002, revocando la resolución recurrida, dictada por el Tribunal de Primera Instancia y desestimó la demanda de autos por prescripción, archivada en autos copia de su notificación a las partes el 7 de noviembre de 2002. Dicho Tribunal expresó al fundamentar su determinación lo siguiente:

> En la situación de autos, según hemos visto, la recurrida fue operada por el peticionario el 5 de octubre de 1999, cuando se le causaron las lesiones alegadas en la demanda, consistentes en la remoción de su ovario derecho y la laceración de su uréter.
>
> Estas lesiones fueron detectadas y tratadas mediante intervenciones llevadas a cabo el 10 octubre y el 29 de noviembre de 1999. La recurrida fue dada de alta el 4 de diciembre de 1999. Para esa fecha, la recurrida conocía de su daño, el cual había sido diagnosticado durante sus intervenciones posteriores, y sabía que el peticionario era quien le había operado inicialmente.
>
> Tres días después de ser dada de alta, el 7 de diciembre de 1999, la peticionaria ya había acudido a su abogado y había solicitado copia

de sus récords médicos, presumiblemente, con el propósito de investigar si el peticionario había incurrido en negligencia.

No existe controversia real sustancial, sin embargo, en torno al hecho de que la reclamación de la recurrida contra la parte peticionaria no fue presentada hasta el 31 de julio de 2001, muchos meses después de la expiración del término prescriptivo establecido por el citado art. 1868 del Código Civil para el ejercicio de tal reclamación, 31 L.P.R.A. sec. 5298. La demanda presentada por la recurrida no contenía alegación alguna para excusar su dilación, a pesar de que correspondía a dicha parte el peso para justificar la misma.

En su comparecencia, la parte recurrida ha sugerido que no estaba en posición de presentar su demanda dentro del período prescriptivo porque, tratándose de una materia técnica médica, no podía saber si contaba con una causa de acción, sino hasta consultar un perito. La recurrida señala que consultó al Dr. Rafael Marcano y que éste no emitió su opinión hasta el 18 de mayo de 2001.

Lo cierto es que, según hemos visto, el conocimiento de las normas jurídicas se presume. Una vez tuvo conocimiento de que había sufrido un daño durante la operación realizada por el peticionario, la recurrida tenía la obligación de, dentro del período prescriptivo dispuesto por ley, llevar a cabo la investigación necesaria para determinar si contaba con una causa de acción y consultar cualquier perito necesario para lo anterior. Padín Espinosa v. Compañía de Fomento Industrial, 2000 J.T.S. a la pág. 759; Vega v. J. Pérez & Cía., Inc., 135 D.P.R. a la pág. 755; López v. Autoridad de Carreteras, 133 D.P.R. 243, 256(1993); Herminio Brau del Toro, supra, a la pág. 440; véase, además, Id.; Vol. II, a la pág. 639; Ricardo De Angel Yagüez, La Responsabilidad Civil, Univ. De Deusto, Bilbao 1988, a la pág. 340; Luis Diez Picazo, La Prescripción en el Código Civil, Bosch, Barcelona, 1964, pág. 240.

La suficiencia de las gestiones llevadas a cabo por la recurrida para este trámite se evalua a la luz del estándar objetivo de la persona prudente y razonable y/o el buen padre

de familia.   H. Brau del Toro, _supra_, a la pág. 440.

Es significativo que, de los documentos sometidos por la recurrida ante este Tribunal, se desprende que dicha parte no envió copia de los récords médicos obtenidos del hospital sino hasta el 27 de agosto de 2000, muchos meses después que se hubieran solicitado los mismos.  Los primeros honorarios del perito no fueron satisfechos sino hasta el 5 de octubre de 2000, casi diez(10) meses después de que la recurrida hubiera contratado a su abogado.  El pago final al perito por su informe se hizo el 4 de junio de 2001.

La recurrida no ha ofrecido explicación alguna para esta dilación.  En estas circunstancias, opinamos que su reclamación debe ser desestimada.

La recurrida plantea que era necesario que ella conociera los detalles médicos de su reclamación, antes de poder determinar que estaba asistida de algún derecho.  Sugiere que existe una controversia real sustancial entre las partes sobre cuándo tuvo conocimiento sobre este particular, por lo que su reclamación no debe ser desestimada sumariamente.

Inconforme la parte demandante de autos con lo actuado por el entonces Tribunal Circuito de Apelaciones presentó el 6 de diciembre de 2002, recurso de _certiorari_ ante este Tribunal.

Señaló como error cometido por el foro intermedio apelativo, lo siguiente:

Erró el Honorable [sic] Tribunal de Circuito de Apelaciones al expedir el auto solicitado de Certiorari radicada [sic] por la parte demandada y revocando [sic] la resolución emitida por el Honorable [sic] Tribunal de Primera Instancia, Sala Superior de Ponce y de esta forma desestimando la presente causa de acción sumariamente por entender que el caso esta prescrito.

El 21 de febrero de 2003, expedimos el auto de certiorari solicitado.

En su alegato la parte peticionaria arguye que el doctor Alfredo Bravo Colón deliberadamente le ocultó a la señora Miriam Vera Morales su verdadera condición clínica y las razones reales de su sintomatología. Ésta última expresa que desconocía que andaba mal y mucho menos de que tenía algún daño, ni contra quién reclamar. Adquirió tal conocimiento cuando recibió el informe pericial del doctor Rafael Marcano. Aduce, que la conducta evasiva del doctor Bravo Colón, conjuntamente con el hecho de haber sido intervenida quirúrgicamente en tres (3) ocasiones por tres galenos distintos, le impidió advenir al conocimiento de que efectivamente había sufrido un daño y quién era el responsable del mismo. Expresa, que las meras sospechas o síntomas, de por sí, no constituyen el conocimiento requerido en la ley para activar el término prescriptivo, máxime cuando el doctor, que la atendía desde antes de la primera intervención quirúrgica, le había hecho creer que los síntomas post operatorios que ella observaba eran normales.

En su alegato la parte recurrida sostiene que la sentencia recurrida emitida por el entonces Tribunal de Circuito de Apelaciones está fundamentada en la declaración jurada suscrita por la señora Vera Morales el 7 de diciembre de 1999, en la que autorizó a su abogado, licenciado Pablo Colón Santiago, a obtener copia del récord médico de la oficina del doctor Bravo Colón. Alega que la sentencia

recurrida, esta fundamentada en las alegaciones de la demanda las que no han sido enmendadas por los peticionarios. Puntualiza, que acoger la posición de la parte peticionaria resultaría en dejar sin efecto la figura de la prescripción en casos de impericia médico-hospitalaria. Expresa, que al permitirle a una parte que se tarde año y medio en someter a su perito el récord médico para su evaluación constituye falta de diligencia y abandono de su causa de acción.

La parte recurrida sostiene, además, que la señora Vera Morales conocía para el 27 de noviembre de 1999, que su uréter derecho fue lacerado durante la primera intervención quirúrgica realizada por el doctor Bravo Colón. Arguye, que el 29 de noviembre de 1999, el doctor Cordero Jiménez sometió a la señora Vera Morales a un procedimiento quirúrgico dirigido a la reparación de la laceración alegadamente sufrida durante la intervención quirúrgica del doctor Bravo Colón, practicada el 5 de octubre de 1999. Sostiene, que resultaría insólito que durante esa hospitalización no se discutiera por la señora Vera Morales y el doctor Cordero Jiménez, la existencia de la referida laceración y su origen.

II

TEORIA COGNOSCITIVA DEL DAÑO

Por la prescripción se extinguen los derechos y las acciones de cualquier clase que sean.[5] La prescripción es materia sustantiva y no procesal. Se rige por los principios del derecho civil. Su fundamento descansa en la necesidad de poner fin a la inseguridad jurídica y a otros efectos adversos que surgen cuando se postergan o dejan pendientes posibles acciones judiciales. Tiene como elementos el factor tiempo, el concurso de un cierto plazo, y tiene como finalidad la certidumbre y firmeza de la vida jurídica. Su propósito es castigar la inercia en el ejercicio de los derechos, asegurar el señorío de las cosas, y evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones.[6]

Las acciones prescriben por el mero lapso del tiempo fijado por la ley.[7] El tiempo para la prescripción de toda clase de acciones, se contará desde el día en que pudieron ejercitarse, cuando no existe otro estatuto de naturaleza especial, que otra cosa disponga.[8] La acción para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia que dispone el Artículo 1802 del Código

---

[5] Artículo 1830 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5241.

[6] De León v. Caparra Center,147 D.P.R. 797 (1999); Vega v. J. Pérez & Cía, Inc., 135 D.P.R. 746 (1994).

[7] Artículo 1861 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5291.

Civil de Puerto Rico,[9] prescriben por el transcurso de un año **desde que lo supo el agraviado.**[10]

El plazo prescriptivo de un (1) año para el ejercicio de las acciones de daños y perjuicios por actos u omisiones de naturaleza culposa o negligente, **comienza a correr desde el momento en que el perjudicado conoce que ha sufrido un daño.**[11]

Para ejercer la acción de daños y perjuicios por impericia médica **no basta tener conocimiento del daño sino que resulta imprescindible el conocer quién es el autor del mismo para dirigir la demanda contra él.** Para que comience a transcurrir efectivamente el plazo prescriptivo extintivo de un (1) año para la presentación de la acción de daños y perjuicios por impericia médica, **el actor debe conocer el daño que ha sufrido y el autor del mismo.**[12]

La razón cognoscitiva del daño, en cuanto al momento relevante que demarca el comienzo del término prescriptivo de un (1) año para  la presentación de una acción de  daños y

---

[8] Artículo 1869 del Código Civil de Puerto Rico, 31 L.P.R.A., sec. 5299.

[9] 31 L.P.R.A., sec. 5141.

[10] Artículo 1868 del Código Civil de Puerto Rico, 31 L.P.R.A., sec. 5298.  Dicha disposición estatutaria lee como sigue:

"Prescriben por el transcurso de un (1) año: (1) La acción para recobrar o retener la posesión.  (2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado."

[11] Ojeda v. El Vocero de P.R., 137 D.P.R. 315, 324 (1994).

[12] Riley v. Rodríguez de Pacheco, 119 D.P.R. 762, 775(1987).

perjuicios por impericia médica, ha sido objeto de profundas diferencias entre los comentaristas. Al obedecer el comienzo del computo del referido plazo prescriptivo a un criterio subjetivo las consideraciones sobre los datos relevantes para la interpretación de este estatuto son profundamente complejas.

Nos comenta el profesor Fernando Reglero Campos, que en cuanto a las acciones de responsabilidad civil extracontractual aplica la regla adoptada por el Código Civil Español en su artículo 1.968, segundo párrafo (Artículo 1868 del Código Civil nuestro, supra), a los efectos que el plazo de prescripción comienza a transcurrir **"desde que lo supo el agraviado".** El dato a tener en cuenta para el inicio del cómputo del plazo de prescripción contenido en el segundo párrafo del artículo 1.968, supra, **obedece a un criterio subjetivo.**[13]

Expresa, el profesor Reglero Campos que la regla establecida en el segundo párrafo del artículo 1.968, supra, deja paso a la norma general del artículo 1.969 del Código Civil Español (Artículo 1869 del Código Civil nuestro, supra), en aquellos casos en que habiendo tenido el perjudicado conocimiento del daño, no es posible todavía el ejercicio de la acción, por concurrir algún obstáculo que lo impida. Es decir, que una cosa es que el agraviado conozca el daño y otra que pueda ejercitar la acción. En tal caso,

---

[13] M. Albaladejo y S. Díaz Alabart, Comentarios al Código Civil y Compilaciones Forales, Madrid, Ed. Revista de Derecho Privado, 1994, T. XXV, Vol. 2, pág. 436.

será a partir de este segundo momento cuando comenzará a correr el cómputo del plazo prescriptivo.[14] Si se ha sufrido un daño infringido por una persona cuya identidad el perjudicado desconoce, la acción del perjudicado es imposible pues no puede identificar la persona pasivamente legitimada. Por tanto, no se trata tan sólo de una cuestión de conocimiento del daño, sino, obviamente, también del dañante. Puntualiza, que el plazo prescriptivo no comienza hasta tanto no se conozca la identidad del dañante o hasta que, utilizando una mínima diligencia, pueda conocerse.[15]

Comenta, el profesor Reglero Campos que en aquellos casos en que la actividad dañosa sea única, esto es, se verifique en un espacio temporal instantáneo, y el daño ocasionado pueda ser fácilmente evaluable en el momento en que se produce, debe concluirse que el plazo de prescripción comienza a computarse desde el momento en que se conoce la causación del daño y, la persona del dañante. Esto ocurre en los casos en que la actividad dañosa es instantánea y los daños ocasionados son de carácter material. No así, en caso de lesiones. En la mayor parte de estos no es posible una evaluación o cuantificación del daño *a priori*.[16]

Expresa, el profesor Reglero Campos, que para que comience el cómputo del plazo de prescripción de la acción reparatoria, el perjudicado debe tener conocimiento de la causación del daño y de la persona del dañante, sin

---

[14] Íd., pág 437.

[15] Íd., págs. 438-439.

necesidad, en principio, de que conozca de modo definitivo el

alcance de los daños.  No obstante, en caso de lesiones

corporales existen casos que esto no es suficiente, pues no

es posible, en la mayoría de las ocasiones, determinar el

alcance exacto de los mismos al momento en que se verifica el

suceso dañoso.  Sobre este último tema, puntualiza lo

siguiente:

> ...es bien conocida la doctrina jurisprudencial,
> absolutamente unánime en la actualidad, según la
> cual, en caso de lesiones, la fijación del *dies a
> quo* del plazo prescriptivo señalado por el
> artículo 1.968, 2°., del Código civil (sic), hay
> que atender al momento en que se conozcan de modo
> definitivo los efectos del quebranto corporal
> padecido.  Generalmente, dicho momento es
> referido al alta médica, pues sólo entonces -se
> dice- se halla el interesado en condiciones de
> ejercitar la acción valorando el alcance efectivo
> y total del daño y de conocer con exactitud el
> importe de la indemnización, ya que con
> anterioridad se desconoce la trascendencia de la
> vulnerabilidad del derecho subjetivo propio por
> la realización de la conducta del tercero.

Añade, el profesor Reglero Campos, que:

> ...la más reciente jurisprudencia no se detiene
> en la referencia al alta médica, sino que en
> muchas ocasiones alude al conocimiento definitivo
> de las consecuencias lesivas, incluso de las
> secuelas síquicas, de modo que en ocasiones el
> dato del alta médica deviene irrelevante.

Señala, que esa línea jurisprudencial ha adquirido

especial relieve en los últimos años, en los que se ha

suavizado aún más el rigor prescriptivo que supone el

criterio de alta médica, declarando que el inicio del plazo

de prescripción no ha de referirse en todo caso a dicho

---

[16] Íd., págs. 441-442.

momento, sino que cuando quedan secuelas, el cómputo empieza a contarse desde la sanidad total del lesionado o desde la determinación del alcance invalidante de tales secuelas, pues hasta que no se sepa ese alcance no puede reclamarse a base de ellas.[17]

El profesor Herminio M. Brau del Toro comenta en cuanto al momento en que se tiene conocimiento de que se ha sufrido un daño, que por necesidad deberán existir algunas manifestaciones exteriores o físicas que lleven al perjudicado a reconocerlas y darse cuenta que ha sufrido una consecuencia lesiva, aunque en ese momento no pueda valorizar toda la magnitud y extensión de los daños. No es necesario que se conozca su magnitud y extensión para que pueda imputarse que tiene conocimiento de la consecuencia dañosa, ya que tal extremo puede ser establecido en un momento posterior durante el proceso jurídico para su reparación.[18]

Señala el profesor Brau del Toro sobre el alcance de la teoría cognoscitiva del daño, lo siguiente:

> Origina complicaciones adicionales el concepto que impone obligación al perjudicado de emplear una razonable diligencia para enterarse de la consecuencia lesiva, esto es, del daño. Aunque el Art. 1868 del Código Civil se limita a preceptuar que las acciones de daño causadas por culpa o negligencia prescriben al año "desde que lo supo el agraviado", sin contener referencia alguna a la cláusula del conocimiento imputado, de "o cuando debió saberlo con la debida diligencia", consideramos que es justo presumir que la cláusula del Art. 1868 referente a "cuando

---

[17] Íd., pág. 445.

[18] H. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da. ed., San Juan, Puerto Rico, Publicaciones J.T.S., Inc., 1986, Vol. I, págs. 440 y 441.

lo supo el agraviado", implícitamente debe incluir la de "o cuando debió saberlo con la debida diligencia". Así lo reconoce la doctrina. Sobre ello De Angel Yagüez nos dice lo siguiente:

> La eventual alegación de desconocimiento del daño deberá juzgarse, a nuestro entender, a la luz del criterio de la excusabilidad o inexcusabilidad de la ignorancia, según es habitual en Derecho". Véase R. de Angel Yagüez, *Lecciones sobre Responsabilidad Civil*, Univ. De Deusto, Bilbao, 1978, p. 138.

En el mismo sentido escribe Díez Picazo:

> En términos generales parece que debe presumirse un conocimiento instantáneo por el perjudicado respecto del daño que se le haya ocasionado y que, incluso, un retraso negligente en llegar a poseer este conocimiento no debe ser tenido en cuenta. De aquí que parezca que la carga de la prueba de la determinación de este momento del conocimiento del daño debe atribuirse al demandante cuanto éste afirme haber alcanzado este conocimiento con posterioridad al daño mismo.". L. Díez Picazo, *La prescripción en el Código Civil*, Ed. Bosch, Barcelona, 1964, p. 240.

La norma de conocimiento imputado tiene marcados matices objetivos. No obstante, en tal caso el perjudicado debe probar que un hombre prudente y razonable, por razón de las circunstancias particulares del caso, no habría podido descubrir la consecuencia lesiva hasta el momento en que él la conoció. Opinamos que dicha norma tiene el efecto de ratificar que el perjudicado tiene la carga de la prueba en cuanto a cuándo fue que tuvo conocimiento de la consecuencia lesiva, o en su caso, de cuándo debió obtenerlo.[19]

Añade, el profesor Brau del Toro que la diligencia es función de la previsibilidad de las consecuencias dañosas producidas por una acción u omisión culposa o negligente.

Depende de la capacidad de preveer que se puede esperar de un hombre razonable y prudente, ante determinadas circunstancias particulares. Si de los hechos en cuestión surge la existencia de un daño, o de condiciones que puedan redundar en un perjuicio, o en la agravación de algún daño o perjuicio ya reconocido, atendidos el conocimiento, la capacidad de reconocer, juzgar y ponderar atribuibles al hombre prudente y razonable, entonces el perjudicado deberá efectuar todas las medidas cautelares que el hombre razonable y prudente ejercería para conocer el alcance del daño por él sufrido.[20]

En Vega v. Pérez & Cía, Inc., supra, expresamos lo siguiente:

> En *Colón Prieto v. Géigel*, supra, resolvimos además que el verdadero punto de partida para el inicio del término prescriptivo de una acción de daños y perjuicios es la fecha en que el agraviado supo del daño y *pudo ejercitar su acción*. Al así resolver, aceptamos que el conocimiento que tenga el titular sobre si ha nacido ya la acción que tiene derecho a ejercer es un factor determinante al evaluar si está prescrita o no dicha acción. Por eso también hemos resuelto que un estatuto de prescripción que tenga el efecto de exigirle a los demandantes instar su acción antes de que tengan conocimiento de que tal causa acción existe, viola el debido proceso de ley. *Alicea v. Córdova*, 117 D.P.R. 676(1986). **No cabe duda de que hemos acogido ya en Puerto Rico la tendencia liberal en la doctrina civilista en lo relativo a la prescripción de las acciones de daños y perjuicios. Conforme a esa tendencia, por consideraciones de justicia, se estima que el término para ejercer acciones corre a partir, no desde que sufre el daño reparable, sino desde que se conocen los otros elementos necesarios para poder ejercer la acción. Como bien señalan los eminentes comentaristas Barrel Macía [A. Borrell**

---

[19] Íd., pág. 440.
[20] Íd., pág. 440.

> **Macía] y Santos Briz en sus respectivas obras sobre el derecho de daños, "para que la justicia quede a salvo en todo caso, con que el agraviado haya sabido de la obligación de reparar daños, se ha de requerir, además, que haya podido ejercitar la acción".** J. Santos Briz, *Derecho de Daños*, **Madrid 1963, pág. 293. Y, claro está, no puede ejercitarse una acción si de buena fe el titular desconoce que tiene derecho a ejercitarla.** A tono con esta elevada concepción están nuestros pronunciamientos no sólo en *Colón Prieto v. Géigel*, supra, y en *Alicea v. Córdova*, supra, sino también en *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762(1987), y en *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249(1992), **donde también reiteramos que una acción de daños no nace mientras el perjudicado no tenga conocimiento de su derecho a esa acción. Claro está, si el desconocimiento que impide ejercer la acción se debe a la falta de diligencia del reclamante, entonces no son aplicables las aludidas consideraciones que la doctrina liberal civilista a sobre impuesto a la normativa general sobre la prescripción.** *López v. Autoridad de Carreteras*, **133 D.P.R. 243(1993);** J. M. Manresa y Navarro, *Comentarios al Código Civil Español*, **Madrid, Ed. Reus, 1973, T. XII, págs. 1224-1225.** (Énfasis nuestro).

Hemos pautado una trayectoria flexible en cuanto al cómputo del término prescriptivo de un (1) año dispuesto en el artículo 1868, supra. Para determinar cuándo comienza a decursar el referido plazo hemos precisado que el momento que se toma como verdadero punto de partida en una acción de daños lo es la fecha en que el perjudicado conoció del daño, quién fue el autor del mismo, y, además, desde que éste conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción. La prescripción no es una figura rígida sino que la misma admite ajustes judiciales,

según sea requerido por las circunstancias particulares de los casos y la noción sobre lo que es justo.[21]

En Margarita Montañéz, et als v. Hospital Metropolitano, et als, resuelto el 24 de mayo de 2002, interpretamos nuevamente el término prescriptivo de un (1) año, a tenor con lo dispuesto en el artículo 1868 del Código Civil, supra. Allí puntualizamos que el referido término para ejercer la causa de acción de daños y perjuicios por impericia médica comienza a transcurrir, no cuando se sufre el daño, sino cuando se conocen todos los elementos necesarios para poder ejercitar la acción. Esto es, el daño y la identidad de quien lo causó. No obstante, si el desconocimiento que impide ejercer la acción se debe a la falta de diligencia del reclamante, entonces no son aplicables estas consideraciones liberales sobre la prescripción.[22]

En Tenorio, et als v. Hosp. Dr. Pila, resuelto el 30 de junio de 2003, nos reiteramos nuevamente en la importancia de la etapa cognoscitiva del daño, indicando que es necesario distinguir entre el momento en que ocurre la consecuencia lesiva y aquel en que el perjudicado la reconozca, ya que la diferencia conlleva efectos jurídicos distintos de vital importancia, como lo es el momento cuando empieza a decursar

---

[21] Santiago v. Ríos Alonso, res. el 7 de febrero de 2002, 2002 T.S.P.R. 15, 156 D.P.R.____(2002), 2002 J.T.S. 21.

[22] 2002 T.S.P.R. 70, 157 D.P.R.____(2002), 2002 J.T.S. 80. Allí reiteramos lo resuelto en Padín v. Cía. Fom. Ind., res. el 25 de febrero de 2000, 2000 T.S.P.R. 32, 150 D.P.R.____(2000), 2000 J.T.S. 44.

el plazo hábil durante el cual el perjudicado puede iniciar su causa de acción reclamando los daños sufridos.[23]

En esta ocasión nos volvemos a reiterar en que el plazo de prescripción aquí aludido comienza a computarse desde el momento en que se conoce la causación del daño, la persona pasivamente legitimada y los elementos necesarios para ejercitar efectivamente su causa de acción. No obstante, resulta imprescindible aclarar cuál es la diferencia cuando la actividad dañosa es instantánea y los daños ocasionados son de carácter material, de aquellas otras situaciones donde los perjuicios son lesiones corporales y no es posible la evaluación o cuantificación de ese tipo de daños y sus consecuencias en forma a *priori*. No compartimos la óptica de distinguir, a manera de excepción, del principio general reconocido por el profesor Reglero Campos, a los efectos que el perjudicado debe tener conocimiento de la causación del daño y de la persona dañante, sin necesidad de que conozca de modo definitivo el alcance y la totalidad de los daños, la razón cognoscitiva del daño material producido por un acto dañoso instantáneo, de aquel que produce lesiones corporales y que no es posible la evaluación a *priori* de la magnitud y extensión de sus consecuencias lesivas al momento de reconocerse tal perjuicio por la persona afectada, y de identificarse al causante del mismo. Veamos.

Una vez conocido por el perjudicado el daño constitutivo de una lesión corporal por la presencia de manifestaciones e

---

[23] 2003 T.S.P.R. 112, 159 D.P.R.____(2003), 2003 J.T.S. 113.

indicios exteriores o físicos, y darse cuenta, o cuando razonablemente debió haber reconocido el sufrimiento del referido daño, e identificado el causante del mismo el plazo prescriptivo de un (1) año ha comenzado a decursar, aunque en ese momento no se pueda valorar a *priori* toda su magnitud y extensión. No es necesario que el perjudicado conozca en ese momento toda la magnitud y extensión de las consecuencias lesivas de las lesiones corporales ya que tal extremo puede ser establecido en un momento posterior durante el proceso jurídico para su reparación.

Los tribunales tienen el deber de determinar, atendidas las circunstancias particulares de cada caso, si el perjudicado ejerció la diligencia de un hombre razonable y prudente, de tener ante sí suficientes manifestaciones e indicios exteriores del sufrimiento de un perjuicio potencial, para identificar lo más prontamente que fuese posible la existencia de un daño, para efectos del comienzo del transcurso del plazo prescriptivo de un (1) año dispuesto en el artículo 1868 del Código Civil, supra, para incoar su acción. Los tribunales deberán determinar, considerando tales indicios y manifestaciones, bajo el estándar de un hombre razonable y prudente, si el perjudicado debió reconocer que se le había infringido un daño. Se hace necesario evaluar si la suficiencia de esos indicios y manifestaciones razonablemente podían llevarlo a concluir que efectivamente se había producido tal daño, aún cuando en ese momento no pudiera conocer con certeza sobre la totalidad de

su magnitud y extensión. Dada la subjetividad de la disyuntiva, el juzgador de hechos deberá preguntarse, cuando no hay controversia sobre la ocurrencia del acto u omisión culposo o negligente y de la relación causal requerida, si la prueba que está ante su consideración, en cuanto a la alegada razón cognoscitiva del daño de parte del perjudicado, sería suficiente para éste apoyar prima facie como demandante una reclamación de indemnización por este daño y, además, si esa prueba es persuasiva a los efectos de reconocer la existencia del mismo y por ende, conceder el resarcimiento reclamado. Si la prueba no es suficiente para lo uno, tampoco debe serlo para lo otro. Si no se puede determinar a base de lo alegado y de la prueba presentada para sostenerlo que sufrió un daño para los efectos de conceder indemnización, tampoco puede concluirse que el perjudicado tuvo conocimiento de algo inexistente. Sería antijurídico e injusto exigir un quantum de prueba que resulte insuficiente sobre la existencia de un daño para conceder indemnización al perjudicado y que, a su vez, resulte suficiente para determinar que su acción está prescrita porque éste tuvo conocimiento de algo que no existe para efectos de la adjudicación en sus méritos de lo reclamado.[24]

---

[24] H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Vol. I, supra, pág. 441.

III

SENTENCIA SUMARIA

La Regla 36 de Procedimiento Civil preceptúa lo referente a la sentencia sumaria.[25] El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles[26] que no presentan controversias genuinas de hechos materiales, por lo tanto no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho.[27] Utilizada de forma apropiada, la sentencia sumaria contribuye a descongestionar los calendarios judiciales.[28]

La Regla 36.2 de Procedimiento Civil[29] permite a un demandado presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[30]

La Regla 36.3 de Procedimiento Civil[31] dispone lo siguiente:

> La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al

---

[25] 32 L.P.R.A. Ap. III, R.36.

[26] Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

[27] Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860 (1995); Revlon v. Las Américas Trust Co., 135 D.P.R. 363 (1994); Rodríguez v. Srio. de Hacienda, 135 D.P.R 219(1994); Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613 (1990); Aseg. Lloyd´s London v. Cía. Des. Comercial, 126 D.P.R. 251 (1990); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987).

[28] Méndez Arocho v. El Vocero de P.R., 130 D.P.R. 867(1992).

[29] 32 L.P.R.A. Ap. III, R. 36.2.

[30] Soto v. Hotel Caribe Hilton, 139 D.P.R. 294(1994).

[31] 32 L.P.R.A. Ap. III, R. 36.3.

> día de la vista, la parte contraria podra [sic] notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito.

La parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar la inexistencia de una controversia real sobre todo hecho material y esencial, que a la luz del derecho sustantivo determinaría que se dicte sentencia su favor.[32] Cuando existe controversia real en relación con hechos materiales y esenciales no debe dictarse sentencia sumaria y cualquier duda debe resolverse en contra de la parte promovente.[33]

Para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos materiales y esenciales presentados por el promovente. No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que

---

[32] Hurtado v. Osuna, 138 D.P.R. 801 (1995); Tello Rivera v. Eastern Airlines, supra.

[33] Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).

necesariamente proceda la sentencia sumaria.[34] Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones hechas por las partes.[35]

El procedimiento de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad.[36]

En términos generales, al dictar sentencia sumaria el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia

---

[34] PFZ Props., Inc. v. Gen. Acc. Ins. Co. 136 D.P.R. 881 (1994); Rivera et al. v. Superior Pkg., Inc. et al. 132 D.P.R. 115 (1992).

[35] Cuadrado Lugo v. Santiago Rodríguez, supra.

[36] Luan Invest. v. Rexach Const. Co. res. el 8 de diciembre de 2000, 2000 T.S.P.R. 182, 152 D.P.R.___(2000), 2000 J.T.S. 196; PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra.

real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede.[37]

Aunque el tribunal dictará sentencia sumaria a su discreción, como regla general, no es aconsejable resolver sumariamente casos complejos o que envuelvan cuestiones de interés público.[38]

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, surgiendo de los mismos que no existen controversias sobre hechos materiales y esenciales y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[39]

Una parte tiene derecho a un juicio plenario cuando existe la más leve o mínima duda en cuanto a cuáles son los hechos materiales y esenciales. Toda duda en cuanto a la existencia de una controversia real sobre los mismos debe resolverse en contra de la parte que solicita la sentencia sumaria.[40] El propósito de utilizar un criterio tan estricto

---

[37] Ibid.

[38] Ibid.

[39] Jusino et als. v. Walgreens, res. el 1 de noviembre de 2001, 2001 T.S.P.R. 150, 155 D.P.R.___(2001), 2001 J.T.S. 154; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986); Roth v. Lugo, 87 D.P.R. 386, 397 (1963).

[40] Mercado Riera v. Mercado Riera, 100 D.P.R. 940 (1972).

para evaluar una moción de sentencia sumaria es que no se ponga en peligro o se lesionen los intereses de las partes.[41]

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria.[42]

Sin embargo, al revisar la determinación de primera instancia, el tribunal de apelación está limitado de dos maneras: **primero**, sólo puede considerar los documentos que se presentaron ante el foro de primera instancia. Las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[43] **Segundo**, el tribunal apelativo sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales y esenciales en disputa. Esa tarea le corresponde al foro de primera instancia.[44]

Una sentencia sumaria, por constituir una decisión en los méritos, es precedente de cosa juzgada cuando se opone entre partes debidamente relacionadas. La denegación de una

---

[41] Philip Morris, Inc. v. Tribunal Superior, 103 D.P.R. 207 (1975).

[42] 10A Wright, Miller & Kane, Federal Practice and Procedure 3d, Sec. 2716, pág. 273 (1998).

[43] Íd., págs. 282-286; Véanse también, e.g., Ortiz Torres v. K & A Developers, Inc., 136 D.P.R. 192 (1994); Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950).

moción de sentencia sumaria, sin embargo, no va más allá de establecer la ley del caso para una ulterior moción basada precisamente en los mismos fundamentos.[45]

Como hemos mencionado previamente, la parte aquí peticionaria alegó en la demanda de autos y demás escritos ante el Tribunal de Primera Instancia que el 5 de octubre de 1999 la señora Miriam Vera Morales fue admitida en el Hospital Dr. Pila del Municipio de Ponce por orden del doctor Alfredo Bravo Colón, para ser sometida a una intervención quirúrgica para extirpación de un quiste ubicado en su ovario izquierdo. Por razón de que su estado de salud continuaba deteriorándose fue intervenida nuevamente el 10 de octubre de 1999 por el doctor Sánchez Gaetan en la sala de operaciones del Hospital Dr. Pila. Durante ese procedimiento quirúrgico se constató la presencia de una laceración en su uréter derecho. La señora Vera Morales afirmó al Tribunal de Primera Instancia en su escrito de oposición a la solicitud de sentencia sumaria, que a esa fecha el doctor Alfredo Bravo Colón no le manifestó que le había lacerado el uréter derecho, por su conducta negligente. Tampoco le informó que le había intervenido el ovario derecho, pues el consentimiento escrito que ella había firmado era para la intervención quirúrgica de su ovario izquierdo. Expresó, que por el contrario el doctor Bravo Colón le aseguró que el deterioro de su estado de salud posterior a la primera

---

[44] Íd., pág. 286.
[45] Sucn. Meléndez v. Pesquera de Busquet, 112 D.P.R.86 (1982).

intervención quirúrgica practicada el 5 de octubre de 1999 era una complicación inherente y normal a la misma.

Alegó, además, la peticionaria ante el Tribunal de Primera Instancia que el 27 de noviembre de 1999 la señora Vera Morales fue admitida nuevamente al Hospital Dr. Pila bajo el cuidado de un tercer facultativo médico quien le diagnosticó una laceración en su uréter derecho, que le provocaba la extravasación de orina ya mencionada. Fue intervenida quirúrgicamente por tercera vez por el nuevo facultativo el 29 de noviembre de 1999. Le fueron practicados determinados procedimientos médicos que produjeron un mejoramiento en su estado de salud. Fue dada de alta el 4 de diciembre de 1999 con un instrumento médico que se le colocó en el área afectada, que fue removido seis (6) meses después. El 7 de diciembre de 1999 la señora Vera Morales suscribió bajo juramento una autorización a un abogado para gestionar una copia de su récord médico en el Hospital Dr. Pila.

La parte aquí peticionaria presentó ante el Tribunal de Primera Instancia la demanda de autos el 30 de julio de 2001, por lo que habiendo transcurrido el plazo prescriptivo de un año establecido por el Artículo 1868 del Código Civil, supra, a partir del 27 de noviembre de 1999 que fue la fecha en la que el doctor Héctor Cordero Jiménez le diagnosticó la presencia de laceración de su uréter derecho, la extravasación de orina provocada por esa razón, y que se enteró que fue intervenida en su ovario derecho y no el

izquierdo, que era el verdaderamente afectado y para lo que ella había dado su consentimiento, se presume que abandonó su derecho.[46] Le correspondía a la parte peticionaria, perjudicados por las acciones del doctor Alfredo Bravo Colón, sostener, bajo juramento, que no reconocieron la existencia de esos daños hasta mucho tiempo después. Por el contrario, de la demanda de autos y demás escritos presentados por esa parte ante el Tribunal de Primera Instancia se desprende que conocieron del daño producido a la señora Vera Morales el 27 de noviembre de 1999. De su escrito de oposición a la solicitud de sentencia sumaria presentado ante el foro de primera instancia surge claramente que el consentimiento escrito suscrito por ella al doctor Bravo Colón era para ser intervenida quirúrgicamente en su ovario izquierdo y no el derecho. Dado el diagnóstico del doctor Cordero Jiménez la parte peticionaria, cuando menos, debió razonablemente haber conocido de sus daños obteniendo prontamente copia de su récord médico en el Hospital Dr. Pila, para lo que autorizó por escrito a su abogado el 7 de diciembre de 1999.

No encontramos razón o motivo para intervenir con lo actuado por el tribunal intermedio apelativo. Dicho tribunal hizo uso del mecanismo de sentencia sumaria en una forma mesurada y razonable. De los documentos presentados ante el Tribunal de Primera Instancia por la parte aquí peticionaria surge claramente que no existe controversia real sobre

---

[46] García Aponte, et al v. E.L.A., 135 D.P.R. 132 (1994).

hechos materiales y esenciales. La parte peticionaria realizó alegaciones en la demanda de autos referente a los daños sufridos por la señora Miriam Vera Morales. Describió en su escrito de oposición a la solicitud de sentencia sumaria la extensión de su consentimiento para ser intervenida quirúrgicamente. De los escritos presentados por esa parte ante el Tribunal de Primera Instancia surge, además, cuando se le diagnosticó su condición. Todo lo alegado en la demanda de autos y demás escritos de la parte peticionaria ante el Tribunal de Primera Instancia presupone conocimiento de la presencia de los daños corporales de la señora Vera Morales, para el 27 de noviembre de 1999, producidos por la conducta del doctor Alfredo Bravo Colón. Lo único que presenta este caso es la aplicación del derecho. La celebración de una vista en los meritos por el Tribunal de Primera Instancia resultaría innecesaria.

IV

Por los fundamentos antes expuestos, confirmamos la sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones.

Se dictará sentencia de conformidad.


Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Myriam Vera Morales, Benny
García García y Yaritza García
Vera

   Demandantes Peticionarios

              v.                        CC-2002-937      Certiorari

Dr. Alfredo Bravo Colón, et
als

   Demandados Recurridos

SENTENCIA

     San Juan, Puerto Rico, a 27 de febrero de 2004.

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, confirmamos la sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones.

     Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. La Jueza Presidenta señora Naveira Merly y la Jueza Asociada señora Fiol Matta no intervinieron.

                         Patricia Otón Olivieri
                      Secretaria del Tribunal Supremo