ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| ORIENTAL BANK<br><br>Recurrido<br><br>v.<br><br>SUCESION GONZALO MANUEL JARA SALAZAR t/c/c GONZALO M. JARA SALAZAR Y OTROS<br><br>Peticionarios | **KLCE202500135** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: BY2022CV00951<br><br>Sobre: Ejecución de Hipoteca |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### **RESOLUCIÓN**

En San Juan, Puerto Rico a 21 de marzo de 2025.

Comparece ante este foro la Sucesión Gonzalo Manuel Jara Salazar, compuesta por Margarita Molina Vélez y Alexandra Jara (Sucesión o "los peticionarios") y nos solicitan que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, notificada el 9 de diciembre de 2024. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* una *Solicitud de Sentencia Sumaria* promovida por los peticionarios.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** el recurso de *certiorari* solicitado.

### I.

El 8 de marzo de 2022, Oriental Bank (Oriental Bank o "parte recurrida") presentó una *Demanda Enmendada* sobre cobro de dinero y ejecución de hipoteca en contra del Sr. Gonzalo Manuel Jara Salazar (señor Jara), la Sra. Margarita Molina Vélez (señora molina) y la Sociedad Legal de Gananciales compuesta por ambos

(matrimonio Jara-Molina) y Mors, Inc. (Mors o Corporación).[1] Alegó ser el tenedor de un pagaré hipotecario suscrito por el matrimonio Jara-Molina a favor de Scotiabank de Puerto Rico el 28 de febrero de 2019 por la suma principal de $234,650.00. Expresó que, la hipoteca grava varias fincas ubicadas en el municipio de Bayamón. A su vez, indicó que realizaron gestiones de cobro, las cuales fueron infructuosas, razón por la cual declaró vencida la deuda. En consecuencia, solicitó el pago adeudado por $217,441.03 por concepto del principal, más los intereses que se acumulan a razón del 5.875% hasta el pago total de la deuda, más el 10% del principal reconocido en el pagaré para costas, gastos y honorarios de abogados. Finalmente, solicitó que se ordenara la ejecución y venta en pública subasta del inmueble.

Por su parte, el matrimonio Jara-Molina presentó su *Contestación a Demanda Enmendada*, en la cual negaron la mayoría de las alegaciones y presentaron las defensas afirmativas que estimaron procedentes.[2] Añadieron que, era Mors el deudor y titular de la propiedad, por lo que, solicitaron la desestimación contra ellos. A su vez, que el señor Jara, como Presidente de la corporación, había notificado su interés de entregar voluntariamente la propiedad, y el Banco había hecho caso omiso.

El 21 de julio de 2023, Oriental Bank presentó una *Segunda Demanda Enmendada*, mediante la cual indicaron que el señor Jara había fallecido, por lo que,

---

[1] *Demanda Enmendada*, anejo I, págs. 4-7 del apéndice del recurso. La *Demanda* original fue presentada el 3 de marzo de 2022.
[2] *Contestación a Demanda Enmendada*, anejo III, págs. 8-13 del apéndice del recurso.

solicitaron enmendar la demanda para sustituirlo por la Sucesión.[3] Además, de incluir al Estado Libre Asociado de Puerto Rico y al Centro de Recaudaciones de Impuestos Municipales para que determinaran el monto de la contribución sobre herencia, si alguno, atribuible al caudal hereditario.

El 6 de diciembre de 2023, la señora Molina presentó su *Contestación a Demanda Enmendada*.[4] En esencia, arguyó que el propio Banco, después que el matrimonio Jara-Molina firmó en representación de Mors, mediante un acta de subsanación excluyó a la Corporación como el único deudor hipotecario. Por lo que, sostuvo que la escritura de hipoteca era nula al cambiar el negocio jurídico, sobre quien era el deudor.

Luego de varias incidencias procesales, el 9 de mayo de 2024, la Sucesión presentó una *Solicitud de Sentencia Sumaria*.[5] Mediante esta, reiteraron que la escritura de hipoteca era nula, puesto que, no cumplió con los preceptos legales. Alegaron que, luego del otorgamiento de la escritura la notario autorizante eliminó mediante una "nota" y de forma unilateral que Mors no era el deudor, sino un garantizador de la deuda. A su vez, sostuvieron que la notario no dio fe de haberles notificado y explicado la naturaleza de dicha nota. De igual forma, añadieron que no surgió de ningún documento la cesión del bien inmueble en garantía del pagaré. Por ello, sostuvieron que el negocio jurídico

---

[3] *Segunda Demanda Enmendada*, anejo IV, págs. 14-17 del apéndice del recurso.
[4] *Contestación a Demanda Enmendada*, anejo V, págs. 18-26 del apéndice del recurso.
[5] *Solicitud de Sentencia Sumaria*, anejo VI, págs. 37-59 del apéndice del recurso.

cambió y la escritura hipotecaria como el pagaré eran nulos.

El 24 de junio de 2024, Oriental Bank presentó una *Réplica a Solicitud de Sentencia Sumaria*.[6] Especificó que la Sucesión carecía de legitimación activa para hacer planteamientos relacionados al carácter de la participación de Mors. No obstante, sostuvo que la Sucesión es la parte deudora obligacional del pagaré, debido a que por su naturaleza es la obligación principal, independientemente de lo que se resuelva sobre las alegaciones relacionadas a la hipoteca. De otra parte, indicó que la notario subsanó un defecto de forma en la escritura de hipoteca, "al percatarse de que la comparecencia de Mors, Inc. es en su carácter de titular de inmueble; dado que como cuestión de hecho no es deudor obligacional pues no suscribió el pagaré citado en la propia escritura y notarizado ante ella, subsanó y aclaró que la capacidad en la que compareció dicha parte fue para consentir como titular de la garantía colateral hipotecaria." Asimismo, añadió que las partes plasmaron sus iniciales al lado de la "nota" como indicativo de su consentimiento de la subsanación realizada. Por ello, reiteró que los peticionarios no podían negar que suscribieron el pagaré y que la Corporación otorgó como titular el inmueble descrito en la escritura de hipoteca.

Examinadas ambas posturas, el 9 de diciembre de 2024, el foro recurrido dictó una *Resolución*, en la cual denegó la solicitud de sentencia sumaria presentada por

---

[6] *Réplica a Solicitud de Sentencia Sumaria*, anejo VII, págs. 116-128 del apéndice del recurso.

la Sucesión.[7]  En lo atinente, identificó la existencia de controversias en los siguientes hechos materiales:

1. La interpretación de la Escritura Núm. 44 sobre Constitución de Hipoteca.

2. La intención de las partes al otorgar la Escritura Núm. 44 sobre Constitución de Hipoteca.

3. Las circunstancias y la manera en que Mors compareció al otorgamiento de la hipoteca.

4. Si existe una resolución corporativa que establezca en qué calidad compareció Mors al otorgamiento de la hipoteca y quienes eran sus representantes.

5. La dirección residencial del señor Jara Salazar y la señora Molina al momento de la otorgación de la hipoteca.

6. La validez de la Escritura Núm. 44 sobre Hipoteca y del pagaré.

7. Si la nota o corrección que hubo en la Escritura Núm. 44 sobre Hipoteca comprometió la validez de dicha escritura afectó el negocio jurídico y la manera en que dicha nota se realizó.

8. Si la Sucesión está sujeta de manera personal a la obligación suscrita en la Escritura Núm. 44.

9. Si Mors está sujeto a la obligación objeto de litigio en cuanto a la parte hipotecaria del negocio jurídico.

10. La deuda, si alguna, y el monto de la misma.

Así especificado, dispuso que los argumentos expuestos por las partes no lograron persuadir al foro *a quo,* por lo que, no podía emitir una sentencia sumaria a favor de los peticionarios.

En desacuerdo, el 24 de diciembre de 2024, la Sucesión presentó una *Solicitud de Reconsideración de la Resolución Interlocutoria notificada el 9 de diciembre*

---

[7] *Resolución*, anejo VIII, págs. 129-165 del apéndice del recurso.

*de 2024*.[8] De entrada, sostuvo que Oriental Bank, ni Mors presentaron evidencia que controvirtieran los hechos que surgieron de la petición de sentencia sumaria, por lo que, incumplieron con la Regla 36 de Procedimiento Civil. De otra parte, manifestó que el foro primario incidió al considerar como hecho cierto la cesión del inmueble por parte de Mors, aun cuando no surgió de la escritura, ni presentaron evidencia. De igual forma, que incidió en considerar como hecho en controversia sobre si existe una resolución corporativa que estableciera la calidad de la comparecencia de Mors al otorgamiento, puesto que, el propio Banco indicó que no tenía la resolución corporativa. En esencia, reiteró que la escritura hipotecaria era nula de su faz, al no exponer los requisitos mínimos para su validez. Así pues, sostuvo que lo medular debió haber sido una evaluación del documento de su faz, para determinar si la "nota" realizada por la notario después del otorgamiento cambió o no el negocio jurídico.

El 9 de enero de 2025, el foro primario notificó una *Orden*, mediante la cual denegó la moción de reconsideración.[9]

Aun inconformes, el 10 de febrero de 2025, la Sucesión presentó la *Petición de Certiorari* de epígrafe. Mediante esta, alegaron que el foro primario cometió los siguientes errores:

1. ERRÓ EL HONORABLE TPI AL CONCLUIR QUE EXISTE CONTROVERSIA REAL RESPECTO AL HECHO DE QUE "EL CO-DEMANDADO MORS INC. CONSINTIÓ EN LA ESCRITURA DE CONSTITUCIÓN DE HIPOTECA" Y QUE "RESPONDE CON EL INMUEBLE COMO TITULAR REGISTRAL DEL MISMO

---

[8] *Solicitud de Reconsideración de la Resolución Interlocutoria notificada el 9 de diciembre de 2024*, anejo IX, págs. 166-206 del apéndice del recurso.
[9] *Orden*, anejo XI, pág. 207 del apéndice del recurso.

ANTE EL INCUMPLIMIENTO DE LA OBLIGACIÓN DE CARÁCTER HIPOTECARIO QUE GRAVA LA PROPIEDAD" A PESAR DE QUE NINGÚN DOCUMENTO SOMETIDO POR ORIENTAL BANK EN SU CONTESTACIÓN A LA SENTENCIA SUMARIA SUSTENTA ESTE HECHO.

2. ERRÓ EL HONORABLE TPI AL NO ADMITIR COMO UN HECHO INCONTROVERTIDO QUE DEL EXPEDIENTE DEL BANCO NO SURGE RESOLUCIÓN CORPORATIVA DE MORS INC. CONSINTIENDO AL NEGOCIO JURIDICO, A PESAR QUE DICHO HECHO ESTÁ SUSTENTADO CON EVIDENCIA DOCUMENTAL SOMETIDA CON LA MOCIÓN DE SENTENCIA SUMARIA, E INCONTROVERTIDA POR EL DEMANDANTE.

3. ERRÓ EL HONORABLE TPI AL NO CONSIDERAR QUE LA SOLICITUD DE SENTENCIA SUMARIA ESTÁ DIRIGIDA A EVALUAR UNA CUESTIÓN PURAMENTE DE DERECHO, CONSISTENTE EN RESOLVER SI CON UNA "NOTA" DEL NOTARIO AUTORIZANTE, SUSCRITA DESPUÉS DE LA FIRMA Y CONSENTIMIENTO DE LAS PARTES EN UNA ESCRITURA DE CONSTITUCIÓN DE HIPOTECA, DICHA NOTARIO PUEDE CAMBIAR LA CAPACIDAD DE COMPARECENCIA DE UNO DE LOS OTORGANTES QUE FIGURA COMO "DEUDOR" EN LA ESCRITURA, (EN ESTE CASO MORS INC.); Y CONVERTIRLO CON UNA SIMPLE NOTA EN "GARANTIZADOR" AFECTANDO DE ESA FORMA EL NEGOCIO JURÍDICO.

4. ERRÓ EL HONORABLE TPI AL NO RESOLVER SUMARIAMENTE SI ES VÁLIDA UNA ESCRITURA DE CONSTITUCIÓN DE HIPOTECA CUANDO ANTES DE LA FIRMA, CONSENTIMIENTO Y OTORGAMIENTO DE LAS PARTES, NO SURGE CLARAMENTE LA AUTORIZACIÓN DEL TITULAR DEL INMUEBLE, CUANDO ANTES DE LA FIRMA, CONSENTIMIENTO Y OTORGAMIENTO DE LAS PARTES, NO SURGE CLARAMENTE LA AUTORIZACIÓN DEL TITULAR DEL INMUEBLE, EN ESTE CASO LA CORPORACIÓN MORS INC., PARA OFRECERLO Y CEDERLO EN "GARANTÍA" DE UN PRÉSTAMO, NI PARA CONSIDERARLO COMO UN "GARANTIZADOR" EN ESTE NEGOCIO JURÍDICO, CUANDO SU "COMPARECENCIA" FUE CLARAMENTE COMO "DEUDOR" SEGÚN SURGE DE LA CLÁUSULA SÉPTIMA DE LA ESCRITURA.

5. ERRÓ EL HONORABLE TPI AL CONCLUIR EN SU RESOLUCIÓN COMO UN HECHO MEDULAR LA "INTERPRETACIÓN" DE LA ESCRITURA NÚMERO 44 DE CONSTITUCIÓN DE HIPOTECA Y LA "NECESIDAD" DE EVALUAR CON ELLO LA "INTENCIÓN" DE LAS PARTES AL OTORGARLA, CUANDO LA CUESTIÓN JURÍDICA ES RESOLVER

SI DE SU FAZ EL DOCUMENTO CUMPLE O NO CON LOS REQUISITOS FORMALES Y LAS DISPOSICIONES JURÍDICAS APLICABLES PARA SU OTORGAMIENTO, CONSISTENTES EN LA LEY HIPOTECARIA, REGLAMENTO NOTARIAL, Y LA JURISPRUDENCIA, SIN SER MATERIAL LA INTERPRETACIÓN SUBJETIVA DE CUESTIONES DE CREDIBILIDAD QUE PRETENDA HACERSE POR EL TRIBUNAL. ELLO YA QUE LOS REQUISITOS FORMALES QUE SE REQUIEREN PARA LA VALIDEZ DE UNA ESCRITURA NADA TIENEN QUE VER CON CUESTIONES DE CREDIBILIDAD, POR SER ELLO CONTRARIO A LA FE NOTARIAL.

6. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE EXISTE CONTROVERSIA DE HECHOS QUE LE IMPIDEN RESOLVER POR LA VÍA SUMARLA SI LA ESCRITURA DE CONSTITUCIÓN DE HIPOTECA NÚMERO 44 ES NULA, CUANDO LA CONTROVERSIA A RESOLVERSE CONSISTE EN EL HECHO DE QUE LA NOTARIO AUTORIZANTE INCLUYÓ UNA NOTA DESPUÉS DEL OTORGAMIENTO Y FIRMA DE LAS PARTES CON LA CUAL UNILATERALMENTE ELIMINÓ EL CARÁCTER DE COMPARECENCIA DE UNO DE LOS OTORGANTES, QUIEN COMPARECIÓ COMO "DEUDOR", PARA CONVERTIRLO CON ESA NOTA EN "GARANTIZADOR"; Y CUANDO LOS HECHOS QUE INCLUYE EL TPI EN SU RESOLUCIÓN NO SON MATERIALES A LA CONTROVERSIA JURÍDICA PLANTEADA.

7. ERRÓ EL HONORABLE TPI AL INCLUIR COMO UN HECHO EN CONTROVERSIA "LA VALIDEZ DE LA ESCRITURA NÚMERO 44 SOBRE HIPOTECA Y DEL PAGARÉ", POR SER ESA PRECISAMENTE LA CUESTIÓN DE DERECHO QUE PODÍA RESOLVER SUMARIAMENTE CON EL EXAMEN DE LOS DOCUMENTOS QUE LE FUERON SOMETIDOS, A TONO CON LAS NORMAS JURÍDICAS APLICABLES.

8. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL INDICAR QUE UN HECHO MATERIAL EN CONTROVERSIA PARA RESOLVER LA NULIDAD DE LA ESCRITURA Y EL PAGARÉ ES EVALUAR EL MONTO DE LA DEUDA; Y EL LUGAR DE RESIDENCIA DE LOS OTORGANTES.

9. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RESOLVER SUMARIAMENTE SI UN PAGARÉ HIPOTECARIO ES VÁLIDO CUANDO NO LO FIRMA EL TITULAR DEL INMUEBLE QUE LO GARANTIZA.

Por su parte, el 25 de febrero de 2025, Oriental Bank presentó su alegato en oposición al recurso.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

## II.

### -A-

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo". Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos

originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

-B-

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Según *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. *Íd.* Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits*, deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo." *Íd.* Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el

derecho se aplicó de forma correcta. *Íd.* Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. *Íd.*

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), nuestro Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar *de novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo,* 189 DPR 414 (2013); (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. Véase, además: *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**III.**

En el caso de autos, la Sucesión solicita nuestra intervención discrecional por la vía del recurso de *certiorari*, a los efectos de que revoquemos la *Resolución* emitida por el foro primario, en la que, en el ejercicio de su discreción, determinó que existían controversias de hechos materiales que impedían se dictara sentencia sumaria.

La Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a revisar las denegatorias de mociones de carácter dispositivo, como lo es la sentencia sumaria. No obstante, concluimos que no se han producido las circunstancias que exigen nuestra intervención en esta etapa de los procedimientos.

Luego de evaluar el expediente, en particular con respecto a los hechos en controversia determinados por el foro primario, no encontramos que la decisión de no disponer del caso por medio de una sentencia sumaria resultase irrazonable, puesto que, las controversias de hechos materiales indicadas surgen de las mociones presentadas.

Consecuentemente, concluimos que la Sucesión no demostró que el foro primario haya abusado de su discreción o que medió error, pasión, prejuicio o parcialidad al emitir la determinación impugnada. Por lo tanto, al no contemplar tales escenarios en el recurso atendido, de acuerdo con los parámetros establecidos en la Regla 40 de este Foro, *supra*, procedemos a denegar el recurso de epígrafe.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** el auto discrecional solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones